IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VURNIS L. GILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-921-KAJ |
| | ) | |
| JUDGE CHARLES H. TOLIVER, IV, | ) | |
| STAN TAYLOR, PAUL HOWARD, | ) | |
| THOMAS CARROLL, ELIZABETH | ) | |
| BURRIS, LAWRENCE McGUIGEN, | ) | |
| CHARLES CUNNINGHAM, NFN | ) | |
| HOLMAN, EMILY STEVENSON, NMN | ) | |
| PORTER, MERISSA McFADDEN, | ) | |
| JOESEPH HODSON, JOHN DOE ONE, | ) | |
| JOHN DOE TWO, NMN WEISS, NMN | ) | |
| KHO, NMN ROBINSON, MARTHA | ) | |
| BOSTON, RICHARD SADOWSKI, | ) | |
| KEVIN HOFFECKER, DIANNE | ) | |
| STACHOWSKI, JIM SIMMS, NMN | ) | |
| FEMME, NMN GWEN, CHAVON | ) | |
| DOTTINS, IGC LISE MERSON, JOHN | ) | |
| DOE THREE, MIKE LITTLE, ED | ) | |
| JOHNSON, NLN MARIA, TIMOTHY | ) | |
| MARTIN, BRIAN ENGRAMS, OSMAR | ) | |
| SAMANDER, JOHN DOE FOUR, JOHN | ) | |
| DOE SIX, JOHN DOE SEVEN, BRENDA | ) | |
| HOLWERDA, NMN RAMON, JOHN DOE | ) | |
| FIVE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

Plaintiff, Vurnis L. Gillis ("Gillis"), is a *pro se* litigant who is presently incarcerated

at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. He filed this action

pursuant to 42 U.S.C. § 1983 and requested leave to proceed *in forma pauperis*

pursuant to 28 U.S.C. § 1915.

## I.    BACKGROUND

Gillis filed his complaint alleging that Defendants[1] violated his Constitutional and state tort law rights during his incarceration at DCC. (D.I. 2 at ¶¶ 27-38.) Gillis "alleges that he was prescribed psychotropic medications" by Doctors Robinson and Weiss which caused "severe side effects, blurred vision, [and] wild mood swings." (Id. at ¶¶ 27-28.) Gillis claims that as a result of his mood swings, while in prison he was charged in four separate incidents with two counts of assault, conspiracy, carrying a concealed deadly weapon, promoting prison contraband, and arson. (D.I. 2 at ¶¶ 30-33.) As a result, he was declared a habitual offender, and sentenced to twenty-seven years of incarceration in addition to his initial six year sentence. (Id. at ¶¶ 35.) Based on these facts, Gillis claims that his Eighth Amendment right to be free from cruel and unusual punishment is being violated because Defendants have shown deliberate indifference to his serious medical needs and because he is being involuntarily subjected to psychotropic drugs. (Id. at ¶¶ 35-36.) Additionally, based on these facts, Gillis allege the state law tort claims of assault and battery, medical malpractice, and conspiracy. (Id. at ¶ 36.)

Furthermore, Gillis alleges that Defendants are "segregating [him] to be housed among mentally ill" prisoners, and that he is separated from the general prison

_____

[1] Judge Charles H. Toliver, IV, Stan Taylor, Paul Howard, Thomas Carroll, Elizabeth Burris, Lawrence McGuigen, Charles Cunningham, NFN Holman, Emily Stevenson, NMN Porter, Merissa McFadden, Joeseph Hodson, NMN Weiss, NMN Kho, NMN Robinson, Martha Boston, Richard Sadowski, Kevin Hoffecker, Dianne Stachowski, Jim Simms, NMN Femme, NMN Gwen, Chavon Dottins, IGC Lise Merson, Mike Little, Ed Johnson, NLN Maria, Timothy Martin, Brian Engrams, Osmar Samander, Brenda Holwerda, NMN Ramon, and John Does One through Seven will be referred to herein collectively as "Defendants."

2

population. (D.I. 2 at ¶ 37.)  Gillis claims that this segregation violates his Fourteenth Amendment rights to due process and equal protection.  Gillis also claims that Defendants are segregating him in retaliation for "exercising [his] First Amendment Rights to petition the courts," and he therefore brings a tort claim for retaliation.  (*Id.* at ¶ 37.)

Finally, Gillis claims that two of the Defendants, John Doe One and John Doe Two, are denying his access to the courts by "obstruct[ing] [his] incoming and outgoing mail... violating [his] access to correspond with legal organizations and courts..." (D.I. 2 at ¶ 38.)  Gillis further asserts that his right to petition the courts is being denied because his access to the law library is limited.  (*Id.* at 15, ¶ 4.)

## II.    STANDARD OF REVIEW

Reviewing complaints filed pursuant to 28 U.S.C. § 1915 is a two step process. First, the Court must determine whether Gillis is eligible for pauper status.  The Court granted Gillis leave to proceed *in forma pauperis* on January 14, 2005.  (Docket Item ["D.I."] 7.)  In that same order, the Court assessed Gillis a $150.00 filing fee, and ordered Gillis to pay a partial filing fee of $3.17 and file an authorization form within thirty days.  Gillis filed the authorization form on February 10, 2005 (D.I. 5.)  The filing fee has not yet been received.

Once the pauper determination is made, the Court must then determine whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief pursuant to 28

3

U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1).[2]  If the Court finds Gillis's complaint falls under

any one of the exclusions listed in the statutes, then the Court must dismiss the

complaint.

When reviewing complaints pursuant to 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1),

the Court must apply the standard of review set forth in Federal Rule of Civil Procedure

12(b)(6).  *See Neal v. Pennsylvania Bd. of Prob. & Parole*, No. 96-7923, 1997 WL

338838 (E.D. Pa. June 19, 1997) (applying Rule 12(b)(6) standard as the appropriate

standard for dismissing claims under § 1915A).  Accordingly, the Court must "accept as

true factual allegations in the complaint and all reasonable inferences that can be

drawn therefrom."  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (citing *Holder v. City

of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993)).  *Pro se* complaints are held to "less

stringent standards than formal pleadings drafted by lawyers" and can only be

dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.'"

*Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) (quoting *Conley v. Gibson*, 355 U.S.

41, 45-46 (1957)).

The United States Supreme Court has held that, as used in § 1915(e)(2)(B), the

term "frivolous" when applied to a complaint, "embraces not only the inarguable legal

---

[2]  These two statutes work in conjunction.  Section 1915(e)(2)(B) authorizes the
Court to dismiss an *in forma pauperis* complaint at any time, if the Court finds the
complaint is frivolous, malicious, fails to state a claim upon which relief may be granted
or seeks monetary relief from a defendant immune from such relief.  Section 1915A(a)
requires the Court to screen prisoner *in forma pauperis* complaints seeking redress
from governmental entities, officers or employees before docketing, if feasible and to
dismiss those complaints falling under the categories listed in § 1915A(b)(1).

4

conclusion but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319,

325 (1989).[3]  Consequently, a claim is frivolous within the meaning of § 1915(e)(2)(B) if

it "lacks an arguable basis either in law or in fact." *Id.* As discussed below, Gillis's

Eighth and First Amendment claims have no arguable basis in law or in fact, and

therefore shall be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)-

1915A(b)(1). His other claims, however, are not frivolous, and will not be dismissed.

## III.    DISCUSSION

### A.    Deliberate Indifference to a Serious Medical Need

Under the Eighth Amendment, the prison system must "provide basic medical

treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d

Cir. 1999), *accord Estelle v. Gamble*, 429 U.S. 97 (1976). However, a claim alleging

negligence that would be sufficient to constitute medical malpractice is not enough to

state a constitutional claim. *Estelle*, 429 U.S. at 106. Instead, "[i]n order to state a

cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to

evidence deliberate indifference to serious medical needs." *Id.* Deliberate indifference

is "the 'unnecessary and wanton infliction of pain'... whether... manifested by prison

doctors in their response to the prisoner's needs or by prison guards in intentionally

denying or delaying access to medical care or intentionally interfering with the treatment

once prescribed." *Id.* at 104-05. A serious medical need is one "that has been

---

[3] *Neitzke* applied § 1915(d) prior to the enactment of the Prisoner Litigation
Reform Act of 1995 (PLRA). Section 1915(e)(2)(B) is the re-designation of the former §
1915(d) under the PLRA. Therefore, cases addressing the meaning of frivolous under
the prior section remain applicable. *See* § 804 of the PLRA, Pub. L. No. 14-134, 110
Stat. 1321 (April 26, 1996).

diagnosed by a physician as requiring treatment or one that is so obvious that a lay

person would easily recognize the necessity for a doctor's attention." *Monmouth*

*County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations

omitted).

Here, Gillis has alleged facts sufficient to show that Defendants may have been

deliberately indifferent to a serious medical need.  His claims center on his allegation

that Defendants have administered "psychotropic" drugs to him against his will.[4]  (D.I. 2

at ¶¶ 27-35.)  Through this allegation, Gillis may be able to show that Defendants

unnecessarily and wantonly inflicted pain on him, showing deliberate indifferece.  His

mental health challenges could certainly be considered a serious medical need, and it

is likely that he has received diagnoses that recommended treatment of these mental

health challenges.  Therefore, Gillis's Eighth Amendment claim for deliberate

indifference to a serious medical need is not dismissed as frivolous pursuant to 28

U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1).

    B.   Denial of Access to Courts

In order to state a claim that his right of access to the courts was denied by

Defendants' alleged interference with incoming and outgoing mail, and because he was

denied access to the law library, Gillis must show that he was actually injured.  *See,*

*e.g., Oliver v. Fauver*, 118 F.3d 175, 177 (3d Cir. 1997) (noting that all claims relating to

access to the courts, including claims of interference with mail and denial of library

---

[4] This claim will also be addressed below, as a prisoner also has a Fourteenth
Amendment Due Process right to be free from the "unwanted administration of
antipsychotic drugs." *Washington v. Harper*, 494 U.S. 210, 220 (1990).

access, require an allegation of actual injury). The requirement that an inmate show actual injury "derives ultimately from the doctrine of standing." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). "It is the role of courts to provide relief to claimants... who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution." *Id.* To allege actual injury, "the inmate must 'demonstrate that the alleged shortcomings... hindered his efforts to pursue a legal claim.'" *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997) (*quoting Lewis*, 518 U.S. at 351).

Gillis fails to allege facts to show that he was actually injured by Defendants' alleged interference with his mail. Instead, Gillis makes bare allegations that his "acess (sic) to correspond with legal organizations and courts" is being denied in violation of the First Amendment. (D.I. 2 at ¶ 38.) Further, Gillis has not alleged facts to show that his lack of access to the law library has caused him any actual injury. Instead, he simply states that "failure to supply acess (sic) to law library materials is a denyal (sic) of court acess (sic)." (D.I. 2 at 15, ¶ 4.) Because Gillis has failed to allege any facts showing that he was actually injured by Defendants' alleged interference with his mail and by Defendants' alleged denial of access to the law library, Gillis's claim for denial of access to the courts is dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1).

7

C.     Unwanted Administration of Antipsychotic Drugs

Gillis claims that Defendants' administration of psychotropic drugs to him against his will violated his constitutional rights. It is clear that a prisoner "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 220 (1990). Under *Harper*, this liberty interest is protected by principles of both procedural and substantive due process. *Harper*, 494 U.S. at 220-23. "[T]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227. Furthermore, "forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992) (*citing Harper*, 494 U.S. 210). Here, Gillis alleges that Defendants are administering "psychotropic drugs" to him against his wishes. (D.I. 2 at ¶¶ 27-35.) This allegation alone is enough to state a claim for violation of his Due Process rights such that this claim is not dismissed as frivolous.

D.     Retaliatory Segregation from the Prison Population

Gillis next claims that his Fourteenth Amendment rights to Due Process and Equal Protection are being violated because, "as retaliation for exercising [his] First Amendment Rights to Petition the Courts," Defendants are segregating him among the

8

mentally ill away from the general prison population.[5]  (D.I. 2 at 14, ¶ 2.)  "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal citations and quotation marks omitted).

Here, Gillis filed this action alleging that he was segregated from the general prison population in retaliation for exercising his First Amendment right to petition the court.  (D.I. 2 at 14, ¶ 2.)  This implicates activity that is protected by the Constitution. Additionally, being confined with mentally ill prisoners is likely sufficient to be a deterrence from undertaking such protected activity.  Finally, the use of the word "retaliation" by a pro se prisoner has been found to be enough to allege a causal link between the protected activity and the adverse action. *See, e.g., Mitchell*, 318 F.3d at 530.  Therefore, Gillis's claim of retaliation is not frivolous, and will not be dismissed as such.

---

[5] Gillis also makes a separate tort claim under state law for retaliation.  This claim appears to provide no broader protection than the constitutional violation that Gillis alleges.  Therefore, the state law claim for retaliation will not be separately addressed here, but neither is it dismissed as frivolous.

E.     State Law Tort Claims[6]

1.     Assault and Battery

Gillis's first state law claim alleges that Defendants' administration to him of psychotropic medications against his will constituted assault and battery. The tort of assault and battery is defined in Delaware as "the intentional, unpermitted contact upon the person of another which is harmful or offensive." *Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995) (*citing* W. Page Keeton, et al., Prosser and Keeton on Torts, §§ 9, 18 (5th ed.1984)). Lack of consent is also an essential element of assault and battery. *Brzoska*, 668 A.2d at 1360. Here, Gillis alleges that Defendants administered medication to him without his consent. This allegation is sufficient to make this claim not frivolous, and thus it will not be dismissed as such.

2.     Medical Malpractice

Medical malpractice is a negligence action. Under Delaware law, "[t]he standard of skill and care required of every health care provider in rendering professional services or health care to a patient shall be that degree of skill and care ordinarily employed in the same or similar field of medicine as defendant, and the use of reasonable care and diligence." DEL. CODE tit. 18 § 6801. Here, Gillis alleges that the health care providers at DCC did not treat him with the requisite standard of care, as they administered various psychotropic drugs to him against his will. (D.I. 2 at ¶ 36.)

---

[6] Delaware's State Tort Claims Act protects state employees and officials from liability for acts that (1) "arose out of and in connection with the performance of an official duty... involving the exercise of discretion;" (2) "[were] done in good faith and in the belief that the public interest would best be served thereby;" and (3) "[were] done without gross or wanton negligence." DEL. CODE ANN. tit. 10, § 4001. It is unclear at this time whether Defendants' actions fit within this provision.

Although these bare facts alone may not be enough to prevail on the merits, they are sufficient to show that Gillis's medical malpractice claim is not frivolous, and, therefore, it will not be dismissed as such.

### 3. Conspiracy to Injure

Gillis further alleges a state tort law claim of conspiracy to injure. "The elements for civil conspiracy under Delaware law are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage." *AeroGlobal Capital Management, LLC v. Cirrus Industries, Inc.*, 871 A.2d 428, 437 n.8 (Del. 2005). Here, Gillis alleges that Defendants worked together to administer psychotropic medication to him against his will, and to commit other torts and civil rights violations. (D.I. 2 at ¶ 36.) Gillis alleges that these actions have damaged him by causing "blurred vision [and] wild mood swings." (Id. at ¶ 28.) These allegations are sufficient to make Gillis's claim not frivolous, and thus this claim will not be dismissed as such.

### F. Remaining Defendants

Because some of Gillis's claims have been dismissed as frivolous, several defendants will also be dismissed from this case. Defendants John Doe One and John Doe Two, identified as the supervisors over the business office and mail room at DCC, are alleged to have obstructed Gillis's mail. As this claim has been dismissed as frivolous, defendants John Doe One and John Doe Two are dismissed from this case.

Gillis has also alleged claims against Superior Court Judge Charles Toliver ("Judge Toliver") based on his order that Gillis "be required to take any and all medications and/or other treatment" that his doctors at DCC ordered for him. (D.I. 2 at

11

¶ 34.) However, "state judges are absolutely immune from liability for their judicial

acts." Briscoe v. LaHue  460 U.S. 325, 334 (1983).[7]  Therefore, Judge Toliver is

dismissed as a defendant in this case.

      G.    <u>Motion for Leave to Amend the Complaint</u>

      Gillis has filed a motion for leave to amend his complaint.  (D.I. 5.)  Under

Federal Rule of Civil Procedure 15(a), "[a] party may amend the party's pleading once

as a matter of course at any time before a responsive pleading is served."  Fed. R. Civ.

P. 15.  Here, the Complaint has not yet been served on Defendants, and no responsive

pleading has been filed or served.  Therefore, Gillis's motion for leave to amend his

complaint is granted.

      H.    <u>Motions for Appointment of Counsel</u>

      Gillis has also filed two motions requesting the appointment of counsel.  (D.I. 3,

12.)  A plaintiff has no constitutional or statutory right to the appointment of counsel in a

civil case.  *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir.1997); *Tabron v.

Grace*, 6 F.3d 147, 153-54 (3d Cir.1993).  Under certain circumstances, the Court may

in its discretion appoint an attorney to represent an indigent civil litigant.  *See* 28 U.S.C.

§ 1915(e)(1).

---

    [7] Delaware law gives judges this same immunity.  *See, e.g.*, *Bailey v. Wiggins*, 6 Del. (1 Houst.) 299, 1856 WL 1019, *4 (Del.Super. 1856) ("Whatever, then, may be his decision on such a question, when it arises on a complaint made before him in this manner, is a decision clearly within his jurisdiction; and, whether right or wrong, he cannot be liable in a civil action to any one for it, because he is then acting in his official capacity as a judicial officer..."); *Alley v. Taylor*, 2001 WL 337245, at *4 (Del.Super. 2001) ("judges... are absolutely immune from liability for civil claims founded upon an act or omission arising out of the performance of an official duty").

However, in *Tabron* and again in *Parham*, the Third Circuit Court of Appeals articulated the standard for evaluating a motion for appointment of counsel filed by a *pro se* plaintiff. Initially, the Court must examine the merits of a plaintiff's claim to determine whether it has some arguable merit in fact and law. *See Parham*, 126 F.3d at 457 (*citing Tabron*, 6 F.3d at 157); *accord Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir.1981) (per curiam) (cited with approval in *Parham* and *Tabron* ). Only if the Court is satisfied that the claim is factually and legally meritorious, should it then examine the following factors: (1) the plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the extensiveness of the factual investigation necessary to effectively litigate the case and the plaintiff's ability to pursue such an investigation; (4) the degree to which the case may turn on credibility determinations; (5) whether the testimony of expert witnesses will be necessary; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See Parham*, 126 F.3d at 457-58 (*citing Tabron*, 6 F.3d at 155-56, 157 n. 5). This list, of course, is illustrative and, by no means, exclusive. *See id.* at 458. Nevertheless, it provides a sufficient foundation for the Court's decision.

In this case, Gillis is alleging that psychotropic drugs are being administered to him against his will. (D.I. 2 at ¶¶ 27-35.) Because of the nature of the issues surrounding Gillis's mental health, expert testimony will be necessary to develop the issues in this case. Moreover, Gillis himself, if he faces mental health challenges, may need guidance in understanding how to obtain and work with an expert witness. Therefore, Gillis's motion for appointment of counsel will be granted to the extent that I will request the assistance of an attorney for Gillis.

13

## III.    CONCLUSION

For the foregoing reasons IT IS HEREBY ORDERED that:

1.  Gillis's First Amendment claims for denial of access to the courts is dismissed without prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1).

2.  All of Gillis's other claims are not frivolous under the standard in 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1), and thus will not be dismissed at this time.

3.  Defendants John Doe One, John Doe Two and Judge Charles Toliver are dismissed from the case.

4.  Gillis's Motion to Amend the Complaint (D.I. 5) is GRANTED.

5.  GIllis's Motions for Appointment of Counsel (D.I. 3, 12) are GRANTED to the extent described.

UNITED STATES DISTRICT JUDGE

October 6, 2005
Wilmington, Delaware

14