## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VURNIS L. GILLIS

Plaintiff,

Civil Action No. 04-921-\*\*\*

v.

STAN TAYLOR, ET AL.,

Defendants'

## RESPONSE TO MOTION OF CORRECTIONAL MEDICAL SERVICES FOR PROTECTIVE ORDER

1.      Plaintiff Gillis served a subpoena on Correctional Medical Services ("CMS") on December 10, 2007 in an attempt to find his medical treatment records for the time period from 1985 to 1996.  Those records are central to his claim in this case that Defendants forcibly, and against his will, administered psychotropic drugs which caused his behavior within the prison that netted him a twenty-seven year extension of his sentence.  *See* D.I. 25 Amended Complaint, para.8.  It is well established that any administration of such drugs to Gillis during this period would have been done by CMS, who provided medical services for that period under contract from the Defendants.  CMS is also the current medical provider for Delaware inmates.  A list of medical providers (1978 to date) produced by Defendants is attached hereto as Exhibit "A".

2.      Gillis' medical treatment records are crucial for Plaintiff's claims and Defendants' defenses in this case.  Plaintiff Gillis has made repeated efforts to find these records through written discovery and depositions of Defendants' personnel.  *See* D.I. 83, 94, and 116.  Further, Counsel for the Defendants has admitted several times in telephone conferences with the Court that searches were made and records were producted.  *See* D.I. 98 pg. 6 lines 17 to 22 attached

hereto as Exhibit "B" and D.I. 135 pg. 9 lines 4 to 15 attached hereto as Exhibit "C." However, the records produced by the Defendants did not include the time period from 1986 to 1995. The Delaware Department of Correction has a 60 year retention policy for medical records. *See* May 22, 2007 deposition of John Oldigs at pg 12, lines 3 to 22 attached hereto as Exhibit "D." That discovery also confirms that CMS was responsible for the creation and maintenance of Gillis's medical records in the critical 1986-1995 period. *See* May 22, 2007 deposition of John Oldigs at pg 14, lines 10 to 15 attached hereto as Exhibit "E." They were also responsible for transferring medical records to subsequent medical providers. *See* May 22, 2007 deposition of John Oldigs at pg. 24 lines 21 to 24, pg. 25 lines 1 to 24, and pg. 26 lines 1 to 15 attached hereto as Exhibit "F." Therefore, Defendants initially arranged for a person employed by CMS to testify regarding the missing records. But that person (Latisha Johnson) had only been on the job for a year and four months and knew nothing about the missing records except that she couldn't find them. The shallowness of her knowledge is exemplified by her answers to over 20 questions with the statement "I don't know." *See* CMS' Exhibit "B." Thus, Plaintiff was left with no option but to seek a 30(b)(6) deposition of CMS to get a **knowledgeable** witness from CMS who could locate the missing records or confirm once and for all that the medical records had disappeared. That is the reason for the current subpoena. This Court in at least one conference has stated that Plaintiff bears the burden on this records issue. *See* D.I. 98 pg. 21 lines 17 to 21 attached hereto as Exhibit "G". Plaintiff's subpoena is the only way he can meet that burden.

       3.     CMS' response to the subpoena was to file a Motion for Protective Order (D.I. 140) ("Motion"). CMS raises two substantive objections to the subpoena which are discussed below. First, in paragraph 5 of the Motion CMS alleges that "[i]t is unreasonable and unduly burdensome to compel CMS, a nonparty, to produce the above requested documents especially

within the eleven day time period specified in the subpoena for compliance. The time for production is unreasonably short to permit documents to be assembled and delivered." The District of Delaware local rules allow that "[u]nless otherwise ordered by the Court, 'reasonable notice' for the taking of depositions under Fed. R. Civ. P. 30(b)(1) and 30(b)(6) shall be not less than 7 days." (D. Del. LR 30.1). Therefore, CMS' assertion that the eleven day period for compliance is "unreasonable and unduly burdensome" is without merit.

4.    Furthermore, CMS counsel had a copy of the subpoena for over three weeks before the return date. More specifically, on November 30, 2007, attorney for Plaintiff Gillis, Mr. Zhun Lu, sent a courtesy copy of the December 10, 2007 subpoena to CMS counsel Mr. Kevin Connors by hand delivery requesting that Mr. Connors accept service of the subpoena on CMS. On December 7, 2007, Mr. Connors informed Plaintiff's counsel that he could not accept service of the subpoena on behalf of CMS. Service of the subpoena on CMS at the Dover, Delaware location was accomplished December 10, 2007. Therefore, CMS by its counsel was in possession of the subpoena 22 days prior to the requested deadline. This is sufficient for CMS to gather the requested materials. Finally, CMS has not requested an extension for time from Plaintiff GILLIS as of the date of this response. Plaintiff GILLIS is willing to entertain a reasonable request for extension of time to provide CMS with the necessary time to gather the documents requested in the December 10, 2007 subpoena.

5.    CMS also argues in paragraph 5 of the Motion that "the request for document production and 30(b)(6) deposition is redundant or repetitive in that it requests discovery of information previously sought through the deposition of Latisha Johnson, a CMS records clerk." But that deposition was not taken pursuant to Rule 30(b)(6) and uncovered no information about the treatment of Plaintiff during the critical period at issue, 1986 – 1995. This was readily

admitted in paragraph 5 of the Motion that "Latisha Johnson also testified that she did not have any knowledge as to the location of any medical records from 1986-1995 pertaining to Gillis." Ms. Johnson indicated that she had only been working for CMS a little over one year. *See* August 20, 2007 deposition of Latisha Johnson at pg. 4, line 4, CMS' Exhibit "B." She answered that she "didn't know" in response to over 20 questions.

6.     Plaintiff is therefore entitled to take the deposition of a **knowledgeable** CMS representative under Rule 30(b)(6) to ascertain the existence of these critical medical records and the compliance with the Delaware Department of Correction's medical records policy.

In addition, Plaintiff is entitled to obtain relevant documents held by CMS pertaining to the possession, custody, or control of Gillis' medical treatment records.

WHEREFORE, Plaintiff GILLIS respectfully requests that this Honorable Court deny the Motion of Correctional Medical Services for Protective Order.

Dated: January 7, 2008        __/s/ Zhun Lu_____
                              Zhun Lu (#4427)
                              CONNOLLY BOVE LODGE & HUTZ LLP
                              The Nemours Building
                              1007 North Orange Street
                              PO Box 2207
                              Wilmington, DE 19899
                              (302) 658-9141
                              zlu@cblh.com

                              *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, Zhun Lu, hereby certify that on January 7, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading, and hand delivery to the following counsel of record for Correctional Medical Services:

> Kevin J. Connors, Esquire
> Marshall Dennehey Warner Coleman & Goggin
> 1220 North Market Street, 5th Floor
> P.O. Box 8888
> Wilmington, DE  19899-8888

I further certify that on January 7, 2008, I caused a copy of the foregoing document to be served by in the same manner as listed above on the counsel of record as below:

> Erica Y. Tross, Esquire
> State of Delaware
> Department of Justice
> Carvel State Building
> 820 N. French Street
> Wilmington, Delaware 19801

> */s/ Zhun Lu*
> Zhun Lu, Esquire (#4427)
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, Delaware 19899
> Telephone: (302) 884-6262
> Fax: (302) 658-5614
> Attorney for Plaintiff
> Email: zlu@cblh.com

# EXHIBIT A

# Delaware Department of Correction
# Medical Contractors
# For Inmate Health Care

| Medical Provider | Contract Period |
|---|---|
| Correctional Medical Systems (CMS) | 07/01/05 – Current |
| First Correctional Medical (FCM) | 07/01/02 – 06/30/05 |
| Correctional Medical Systems (CMS) | 07/01/00 – 06/30/02 |
| Prison Health Services (PHS) | 07/01/96 – 06/30/00 |
| Correctional Medical Systems (CMS) | 07/01/85 – 06/30/96 |
| Frank E. Basil | 1982-1984 |
| Prison Health Services (PHS) | 1980-1982 |
| Sacred Heart | 1978-1980 |
|  |  |

U01434

# EXHIBIT B

1

1              IN THE UNITED STATES DISTRICT COURT

2             IN AND FOR THE DISTRICT OF DELAWARE

3                  - - -

    VURNIS L. GILLIS,

4                     :    CIVIL ACTION

         Plaintiff,      :

5                     :

           v.           :

6                     :

    STAN TAYLOR, et al.,     :

7                     :    NO. 04-921 (***)

        Defendants.

8                  - - -

9               Wilmington, Delaware

         Wednesday, April 18, 2007 at 9:31 a.m.

10              TELEPHONE CONFERENCE

11                  - - -

12    BEFORE:     HONORABLE **MARY PAT THYNGE**, Magistrate Judge

13                  - - -

    APPEARANCES:

14

15

16          CONNOLLY, BOVE, LODGE & HUTZ, LLP

         BY:  ZHUN LU, ESQ., and

17            PAUL E. CRAWFORD, ESQ.

18             Counsel for Plaintiff

19

20          DELAWARE DEPARTMENT OF JUSTICE

         BY:  ERIKA YVONNE TROSS, ESQ.

21            Deputy Attorney General

22             Counsel for Defendant

23

24

                      Brian P. Gaffigan

25                      Registered Merit Reporter

1        MR. LU:  And so we do need to have those medical

2   records to find out whether, number one, whether he needs

3   to be medicated.  At least, we have indications that he was

4   regularly medicated as early as, say, June of 1996 but there

5   was no indication of the reason for any diagnosis, any

6   doctor's opinion as to whether he should be put on those

7   medications.

8        So our position is we do need those records.  We

9   don't know how.  So that is why we also filed a request for

10  a witness under Rule 30(b)(6).  We would like to see what

11  is, what are the policies or regulations or rules as to keep

12  the medical records for the prisoners.

13        THE COURT:  Okay.  I understand.

14        Erika.

15        MS. TROSS:  Yes.

16        THE COURT:  Any response?

17        MS. TROSS:  Your Honor, just briefly.  We have

18  produced to the plaintiff over 600 pages of medical records

19  and documents.  We also produced an affidavit that we

20  received from the medical provider indicating they searched

21  all of their records for Mr. Gillis and that they produced

22  everything that they have.

23        I'm not certain why records from 20 years ago

24  are pertinent to this case.  If anything, there would be

25  statute of limitations problems if he is claiming things

# EXHIBIT C

1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                           - - -

     VURNIS L. GILLIS,

4                                    :      CIVIL ACTION

             Plaintiff,             :

5                                    :

           v.                        :

6                                    :

     STAN TAYLOR, et al.,            :

7                                    :      NO. 04-921 (***)

             Defendants.

8                           - - -

9                       Wilmington, Delaware

             Thursday, November 15, 2007 at 9:00 a.m.

10                     *TELEPHONE CONFERENCE*

11                          - - -

12     BEFORE:      HONORABLE **MARY PAT THYNGE**, Magistrate Judge

13                          - - -

     APPEARANCES:

14

15

             CONNOLLY, BOVE, LODGE & HUTZ, LLP

16           BY:  ZHUN LU, ESQ.,

                  PAUL E. CRAWFORD, ESQ., and

17                GRANT D. CUNNINGHAM, ESQ.

18                     Counsel for Plaintiff

19

20           DELAWARE DEPARTMENT OF JUSTICE

             BY:  ERIKA YVONNE TROSS, ESQ., and

21                OPHELIA WATERS, ESQ.

                  Deputy Attorney Generals

22

                       Counsel for Defendant

23

24

                            Brian P. Gaffigan

25                          Registered Merit Reporter

1    37, the advisory committee states Rule 37 provides generally

2    for sanctions against parties or persons unjustifiably

3    resisting discovery.  That has not occurred in this case.

4              And the second reason is related to the first.

5    The State defendants have been fully cooperative.  We have

6    complied with all court orders.  We have produced to the

7    plaintiff hundreds of pages of documents.  We have made

8    Mr. Gillis' medical records available.  We have made a

9    30(b)(6) witness available and we have even gone so far as

10   to request documents from the Delaware Psychiatric Center,

11   documents we do not control or possess.  We have requested

12   those documents and produced what was given to us to the

13   plaintiff.  In this situation where the defendants have been

14   cooperative, there are no grounds for a punitive Rule 37

15   order.

16             My third reason is that the State defendants,

17   while they own the medical records, do not maintain them.

18   We are not the keepers of the medical records.  That is the

19   responsibility of the medical defendants.  As the court has

20   seen, the plaintiff has yet to serve the medical defendants

21   in this case.  They have not yet been served and they are

22   the ones who are responsible for keeping these records on a

23   daily basis.

24             Finally, Your Honor, the plaintiff has other

25   alternatives in this case besides a Rule 37 order.  He can

# EXHIBIT D

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VURNIS GILLIS                    : Civil Action No.
              Plaintiff          : 04-921
                                 :
        -v-                      :
                                 :
STAN TAYLOR, et al              :
              Defendants         :


        Deposition of JOHN OLDIGS, taken before
Elaine Gallagher Parrish, RPR, CRR, at The Nemours
Building, 1007 North Orange Street, Wilmington,
Delaware, on May 22, 2007, commencing approximately at
10:00 a.m.


APPEARANCES:

        ZHUN LU, ESQ.
        ERIC JAMES EVAIN, Ph.D., ESQ.
        GRANT D. CUNNINGHAM, ESQ.
        Connolly Bove Lodge & Hutz, LLP
                The Nemours Building
                1007 North Orange Street, P.O. Box 2207
                Wilmington, Delaware 19899
                for the Plaintiff,

        ERIKA Y. TROSS, ESQ.
        Deputy Attorney General
                State of Delaware Department of Justice
                820 North French Street
                Wilmington, Delaware 19801
                for the Defendants.


                WILCOX & FETZER
     1330 King Street - Wilmington, Delaware 19801
                (302)655-0477
                www.wilfet.com



WILCOX & FETZER LTD.
Registered Professional Reporters



JOHN OLDIGS

12

1    for your medical records?

2        A.    No, we do not.

3        Q.    Okay.    Then can you explain how do you keep your

4    medical records?

5        A.    Upon release they're kept at the prison facility

6    for three years.

7        Q.    Released, can you explain what that released

8    means?

9        A.    Once an inmate is released from our system --

10       Q.    Okay.

11       A.    -- his medical file is kept at that releasing

12   facility for three years.

13       Q.    Okay.  And after that?

14       A.    Then they are archived, that entire year of

15   medical files is archived where it goes to another State

16   agency, archives.

17       Q.    Okay.  How long do you keep the medical records

18   in that archives?

19       A.    57 years.

20       Q.    57 years.

21       A.    Right.  It's total retention of 60 years.

22       Q.    Okay.  In that case if the -- that procedure has

23   been followed then the person -- the prisoner's record

24   should be either in your custody or in the archive if

# EXHIBIT E

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VURNIS GILLIS            : Civil Action No.
       Plaintiff     : 04-921
                     :
    -v-             :
                     :
STAN TAYLOR, et al       :
       Defendants    :

Deposition of JOHN OLDIGS, taken before
Elaine Gallagher Parrish, RPR, CRR, at The Nemours
Building, 1007 North Orange Street, Wilmington,
Delaware, on May 22, 2007, commencing approximately at
10:00 a.m.

APPEARANCES:

    ZHUN LU, ESQ.
    ERIC JAMES EVAIN, Ph.D., ESQ.
    GRANT D. CUNNINGHAM, ESQ.
    Connolly Bove Lodge & Hutz, LLP
        The Nemours Building
        1007 North Orange Street, P.O. Box 2207
        Wilmington, Delaware 19899
        for the Plaintiff,

    ERIKA Y. TROSS, ESQ.
    Deputy Attorney General
        State of Delaware Department of Justice
        820 North French Street
        Wilmington, Delaware 19801
        for the Defendants.

WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477
www.wilfet.com



WILCOX & FETZER LTD.
Registered Professional Reporters



JOHN OLDIGS

14

1    that she retrieved only go back to about date of 1996,

2    1995?

3       A.    I understand.

4       Q.    Does that sound normal to you? You understand

5    that Mr. Gillis is still under the custody of the State

6    and he's been incarcerated since 1986, but his medical

7    records from that affidavit which states that the

8    records only goes back to '95 or '96, so what's your

9    answer to that?

10      A.    I know when this was happening back in '06 that

11   I had contacted his previous places of incarceration,

12   asked them to search for his records. I'm in a central

13   location to where I'm assuming that CMS, Correctional

14   Medical Services is doing all they can to fulfill the

15   request of the entire incarceration period.

16      Q.    Okay. So did you get any answer from them?

17      A.    I believe that we did find some from Sussex.

18      Q.    When was this?

19      A.    And had forwarded them up last year, around this

20   time period.

21      Q.    Okay.

22      A.    I would also like to add that I received two or

23   three requests a day for a medical file.

24      Q.    I understand.

# EXHIBIT F

1

```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE


VURNIS GILLIS                    : Civil Action No.
              Plaintiff          : 04-921
                                 :
        -v-                      :
                                 :
STAN TAYLOR, et al               :
              Defendants         :



              Deposition of JOHN OLDIGS, taken before
Elaine Gallagher Parrish, RPR, CRR, at The Nemours
Building, 1007 North Orange Street, Wilmington,
Delaware, on May 22, 2007, commencing approximately at
10:00 a.m.


APPEARANCES:

        ZHUN LU, ESQ.
        ERIC JAMES EVAIN, Ph.D., ESQ.
        GRANT D. CUNNINGHAM, ESQ.
        Connolly Bove Lodge & Hutz, LLP
                The Nemours Building
                1007 North Orange Street, P.O. Box 2207
                Wilmington, Delaware 19899
                for the Plaintiff,

        ERIKA Y. TROSS, ESQ.
        Deputy Attorney General
                State of Delaware Department of Justice
                820 North French Street
                Wilmington, Delaware 19801
                for the Defendants.



                WILCOX & FETZER
        1330 King Street - Wilmington, Delaware 19801
                (302)655-0477
                www.wilfet.com
```



**WILCOX & FETZER LTD.**
Registered Professional Reporters



JOHN OLDIGS

24

1   medical contractor to just correspond with their medical

2   unit.

3     Q.   Okay.  You mentioned that there is an archive

4   for medical records, correct?

5     A.   Right.

6     Q.   When you received requests for medical records

7   do you check the archives as well?

8     A.   If the individual has been out of our system

9   longer than three years or it's an older request that

10   goes back, and I keep a list of the last year each

11   facility has sent their inactive files to archives, so I

12   know that if I receive a request on an individual, say,

13   released in 1999 that his file is going to be in

14   archives, I'll just go to my content list of those

15   records to find out which box his file is in and request

16   it from archives.

17     Q.   So if a person is still under the custody of the

18   State, is still a prisoner, then his record would not be

19   in the archives, is that right?

20     A.   Correct.

21     Q.   Okay.  Early on you mentioned the medical

22   providers, they either changed between from year to

23   year?

24     A.   Yes.


W&F
WILCOX & FETZER LTD.
Registered Professional Reporters

JOHN OLDIGS

25

1    Q.    Or sometimes the contract maybe renewed and they

2    continued.   Let's just say if you have a change of

3    medical provider, let's just say five years ago, and

4    then from the provider A to provider B how do they pass

5    the medical records, what other regulations procedures

6    on that?

7    A.    The transition period?

8    Q.    Yes.

9    A.    Normally I have always seen happen to where the

10   people that work at the prison facilities are hired on

11   by the new company that the only thing that changes is

12   the upper management.   New company comes in, they just

13   hire all the existing staff to where really there is no

14   change at the prison facilities.   It's just the home

15   office changes to a new company.

16   Q.    All right.   So the records would --

17   A.    They still remain in the same place.

18   Q.    Okay.

19   A.    They're not moved.

20   Q.    So would that be true since, let's say from 1986

21   to 1995, or 1996 --

22   A.    Yes.

23   Q.    -- period?   All right.   I think I'm pretty much

24   done with my questions.   Just to summarize what we

# EXHIBIT G

1

1            IN THE UNITED STATES DISTRICT COURT

2            IN AND FOR THE DISTRICT OF DELAWARE

3                         - - -

VURNIS L. GILLIS,

4                                  :       CIVIL ACTION
          Plaintiff,              :

5                                  :

          v.                      :

6                                  :

STAN TAYLOR, et al.,              :

7                                  :       NO. 04-921 (***)
          Defendants.

8                         - - -

9                   Wilmington, Delaware
              Thursday, November 15, 2007 at 9:00 a.m.

10                  *TELEPHONE CONFERENCE*

11                        - - -

12   BEFORE:     HONORABLE **MARY PAT THYNGE**, Magistrate Judge

13                        - - -

     APPEARANCES:

14

15

              CONNOLLY, BOVE, LODGE & HUTZ, LLP

16            BY:  ZHUN LU, ESQ.,
                   PAUL E. CRAWFORD, ESQ., and

17                 GRANT D. CUNNINGHAM, ESQ.

18                 Counsel for Plaintiff

19

20            DELAWARE DEPARTMENT OF JUSTICE
              BY:  ERIKA YVONNE TROSS, ESQ., and

21                 OPHELIA WATERS, ESQ.
                   Deputy Attorney Generals

22

                   Counsel for Defendant

23

24

                        Brian P. Gaffigan

25                      Registered Merit Reporter

 1    that information, or whether that has even been explored to

 2    any degree, and that is in part why I think it's premature.

 3    It may be that I grant your motion, okay?  It may be that I

 4    grant plaintiff's motion but I think it's premature at this

 5    stage.

 6              MR. LU:  I understand, Your Honor.

 7              THE COURT:  Okay?

 8              MR. CRAWFORD:  We will amend that.

 9              THE COURT:  Yes, that's what I'm trying to stay,

10    Paul.  Because this is asking the court to make a finding of

11    fact when there are holes in the argument.  That's what I'm

12    concerned about.  Because even though the State is supposed

13    to maintain records, it's got to receive those records and

14    those records have got to have been done to begin with.

15              MR. CRAWFORD:  That will be our goal is to get

16    that cemented.

17              THE COURT:  Yes.  And to the extent that you can

18    try to get that information and explore it, there are other

19    ways of doing it through discovery with the State and as

20    well as with these third-party providers.  And I don't know

21    whether you know who all the third parties providers are.

22              MR. LU:  We do know.  We do know, Your Honor.

23              THE COURT:  From 1985 on?

24              MR. LU:  That is correct.

25              THE COURT:  All right.