# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VURNIS L. GILLIS, | ) CIVIL ACTION |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-921 (SLR) |
| | ) |
| STAN TAYLOR et al., | ) |
| | ) |
| Defendants. | ) |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS
## MOTION FOR SUMMARY JUDGMENT
## ON THE ISSUE OF IMPROPER ADMINISTRATION OF FORCED
## PSYCHOTROPIC MEDICATIONS

---

Dated: September 2, 2008

Zhun Lu (#4427)
CONNOLLY BOVE LODGE & HUTZ
P.O. Box 2207
Wilmington, DE   19899-2207
Telephone:        (302) 888-6207
Facsimile:        (302) 658-5614
Email:            ZLu@cblh.com

Attorney for Plaintiff

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................. iii

I.    NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

II.   SUMMARY OF ARGUMENT .................................................................................... 6

III.  STATEMENT OF FACTS ........................................................................................... 8

  A.  The State is Legally Responsible for Maintaining Inmates' Medical Records and Has a Sixty-Year Medical Record Retention Policy ................................................................... 8

  B.  By State's Own Admission, State's Prison Health Care Providers Have Been in Compliance with the National Commission on Correctional Health Care (NCCHC) Standards Since 1986 ............................................................................................................. 9

  C.  The NCCHC Standards Require Proper Documentation and Maintaining Inmates' Medical Records ............................................................................................................. 10

IV.   ARGUMENT .............................................................................................................. 11

  A.  Standards for Summary Judgment ............................................................................. 11

  B.  Defendants' Failure to Produce the Missing Medical Records Is  Highly Prejudicial and Hinders the Administration of Justice ............................................................................ 12

  C.  Improper Psychological or Psychiatric Treatment is a violation  of Mr. Gillis' Constitutional Rights ..................................................................................................... 13

  D.  The State Violated Its Own Medical Record Retention Policy ..................................... 14

  E.  The States Failed to Follow the NCCHC Standards ................................................... 14

  F.  The State Failed to Police Its Prison Medical Service Providers In Compliance with State's Policy and NCCHC Standards ...................................................................... 15

V.    CONCLUSION ........................................................................................................... 16

## TABLE OF AUTHORITIES

PAGE

CASES

*Anderson v. Liberty Lobby Inc.*,
    477 U.S. 242 (1986)................................................................................................ 12

*Farmer v. Brennan*,
    511 U.S. 825 (1994)................................................................................................ 14

*Gray v. York Newspapers, Inc.*,
    957 F.2d 1070 (3d Cir. 1992) ............................................................................... 13

*Inmates of Allegheny County Jail v. Pierce*,
    612 F.2d 754 (3d Cir. 1979) ................................................................................. 15

*Olson v. General Elec. Aerospace*,
    101 F.3d 947 (3d Cir. 1996) ................................................................................. 13

*Riggins v. Nevada*,
    504 U.S. 127 (1992).......................................................................................... 14, 15

*Tillery v. Owens*,
    907 F.2d 418 (3d Cir. 1990) ................................................................................. 15

RULES

Fed. R. Civ. P. 56................................................................................................... 12

I.    **NATURE AND STAGE OF PROCEEDINGS**

Mr. Vurnis L. Gillis, an inmate incarcerated since 1986, acting as a pro se

plaintiff, initiated this action on July 21, 2004 with a handwritten Complaint under 42

U.S.C. § 1983 (D.I. 2).  Mr. Gillis alleged several civil rights violations committed by

various defendants during his incarceration including deliberate indifference to serious

medical needs and improperly forced administration of psychotropic medications since

1987 (D.I. 2, pp 10-12).  Mr. Gillis also alleged that the improperly forced psychotropic

medications caused his irrational behaviors that resulted in four additional charges during

his incarceration and added 27 years to his original sentence. Id.

In an October 6, 2005 Memorandum Order, this Court addressed several of

Plaintiff Gillis' allegations and concluded some were frivolous but others were not.

Underlying those claims found not to be frivolous is the central issue in this case, i.e.,

whether the forced administration of psychotropic drugs was proper or not (D.I. 23, pp.

4–12).

The October 6, 2005 Order dismissed several Defendants (Judge Toliver and John

Does) from the case (D.I. 23, pp. 11–12).  The Order also granted Plaintiff Gillis' Motion

to Amend the Original Complaint and Appoint Counsel.  Plaintiff Gillis filed his

Amended Complaint on October 14, 2005, which made similar claims as in the original

complaint but added additional Defendants (D.I. 25).  The Amended Complaint was

dismissed without prejudice on February 1, 2006 and the case was ordered to proceed on

the original complaint (D.I. 71).  Prior to appointment of counsel pursuant to the October

6, 2005 Order, Defendants filed their Motion to Dismiss (D.I. 66).

This Court appointed the undersigned as Plaintiff's counsel on May 3, 2006 (D.I. 79). Immediately after the appointment, Plaintiff's counsel e-mailed Defendants' counsel on May 4, 2008 requesting access to Plaintiff Gillis' medical records starting from the time of his incarceration i.e., 1986. On May 9, 2006, Defendants sent Plaintiff's counsel copies of Plaintiff Gillis' medical records (D.I. 89). However, the produced medical records cover only the years from 1996 to 2006. On June 15, 2006, Plaintiff's counsel wrote to Defendants' counsel requesting specifically the missing records covering treatment of Plaintiff from 1986 to mid-1990s. This was formalized in a Request for Production on June 30, 2006 (D.I. 83) seeking, *inter alia*, all relevant documents pertinent to Plaintiff Gillis' claims of forced administration of psychotropic drugs. On August 15, 2006, Defendants responded to Plaintiff's Requests but still failed to provide the medical records from the critical 1986 to mid-1990s period.

On April 18, 2007, a telephone conference was held where Magistrate Judge Mary Pat Thynge emphasized the critical nature of the missing medical records (D.I. 113). Defendants were ordered to identify individuals who would be able to identify where the missing medical records are (D.I. 133 at 11, ln. 2). On May 22, 2007, Plaintiff's counsel took the Rule 30(b)(6) deposition of John Oldigs, the State's medical records custodian. Mr. Oldigs testified that the State has a policy to retain prisoner medical records for 60 years (Mr. Oldigs' Deposition Transcript, p. 15, attached are Exhibit A). Defendants also provided a list of the present and past medical providers for the relevant period (D01434)[1]. On July 5, 2007, Defendants produced a second set of medical records to

---

[1] The following are the State's inmate medical care providers for the relevant period.
Correctional Medical Services (CMS): July 1, 2005 to present;
First Correctional Medical (FCM): July 1, 2002 to June 30, 2005;

2

Plaintiff's counsel, which were mostly duplicative to the previously produced medical records and provided no medical information about the Plaintiff antedating 1996.

On July 26, 2007, based on the list acquired from the State, Plaintiff served subpoenas on Defendants' current and past medical providers for the relevant period requesting production of medical and/or psychiatric records from the years of 1986–1995 (D.I. 115). But none of the providers provided the requested records or sufficient information on the whereabouts of the medical records.

On August 20, 2007, Plaintiff's counsel took the deposition of Ms. Latisha Johnson, a medical record clerk at Correctional Medical Services ("CMS"), who provided health services to Delaware prisoners during the critical 1986- mid 90's period. She had previously executed an affidavit for Defendants stating that she "found no records dating from 1986 to the mid 1990s." (D.I. 120, p. 3). Ms. Johnson testified in her deposition that she looked for the records a second time but still could not find the records from 1986 to mid-1990s (see p. 21 of Ms. Johnson deposition Transcript, attached as Exhibit B). At the time of the deposition, Ms. Johnson only worked for CMS for about one and one- half years and could not provide sufficient information on CMS procedures about receiving medical records from the previous medical provider or about passing the records to a subsequent medical provider.

To resolve the missing records problem, Plaintiff's counsel requested this Court hold a conference call to decide discovery disputes with Defendants. This Court granted

---

CMS: July 1, 2000 to June 30, 2002
Prison Health Services (PHS): July 1, 1996 to June 30, 2000;
CMS: July 1, 1985 to June 30, 1996.

the request and held a telephone conference hearing on August 23, 2007 (D.I. 126).

During the hearing, Plaintiff's counsel made a motion to compel Defendants to produce

the missing medical records (D.I. 126, p. 14, lns. 20–22). This Court declined to issue a

motion to compel but instead ordered Defendants to send letters to past providers

requesting the missing documents (D.I. 126, p. 14, ln. 24 and p. 18, ln. 19). Additionally,

this court asked Plaintiff's counsel to go to DCC and look through the available records

first hand. This Court concluded by giving each party 120 days to fulfill their discovery

obligations (D.I. 126, p. 24, lns. 4–8).

Pursuant to the Court's August 23, 2007 Order, Defendants requested copies of

Plaintiff Gillis' medical records from their past medical providers on October 19, 2007

but no additional medical records were forthcoming. Further, Plaintiff's counsel

subpoenaed the current and past medical providers on requesting information relevant to

the missing records (D.I. 129-132). Both FCM and PHS responded through counsel

indicating they did not possess any of Plaintiff Gillis' medical records. CMS moved to

quash the subpoena on November 15, 2007 (D.I. 136). Plaintiff's counsel withdrew the

subpoena and contemporaneously filed a separate subpoena to obtain information

regarding Plaintiff Gillis' medical treatment information from CMS (D.I. 138, 139). In

response, CMS filed a motion for protective order and Plaintiff's counsel responded to

that motion (D.I. 140, 141).

In a further effort to locate the missing documents Plaintiff's counsel searched

files at the Delaware Correctional Center and Sessex Correctional Institute. Nothing

pertinent to Mr. Gillis' medical treatment between 1986 and the mid-90s was found.

This Court held a status hearing on November 11, 2007, where the parties discussed the Defendants' inability to produce the missing medical records (D.I. 135). During the hearing, Plaintiff's counsel renewed the motion for Rule 37 sanctions, specifically to establish the facts as alleged and preclude the state to oppose the established facts (D.I. 135, p. 3). A request for monetary sanctions under Rule 37 was also made (Id. p. 7). This Court reserved judgment on Rule 37 sanctions but made it clear that Defendants should be forthcoming on the policies and procedures agreed to by Defendants and the past and current medical providers (D.I. 135 at 22). Additionally, this Court emphasized that it was obviously **not the prisoner's obligation** to maintain his medical records (D.I. 135 at p. 23).

On March 25, 2008, Plaintiff's counsel filed a combined set of requests for admission, interrogatories, and production of documents, all of which asked for additional information regarding the State's policies and procedures relating to the management of records and standards for administering health care (D.I. 143).

On April 23, 2008, this Court held a discovery hearing and ordered Defendants and non-party CMS, State's current medical services provider (also the provider from 1986 to 1996), to respond to outstanding discovery requests. (D.I. 145). Defendants, on May 27 2008, responded to Mr. Gillis' discovery requests and admitted that Mr. Gillis' medical records from 1986–1995 could not be located (D.I. 147). On June 5, 2008, CMS, Defendants' current medical service provider for inmates, responded by an email to Plaintiff's counsel that it could not locate the documents. An in-person discovery conference was requested on July 25, 2008, seeking a court ruling on consequences the Defendants should face for failing to produce key medical records.

5

A court hearing was conducted on August 26, 2008. Plaintiff renewed his Rule 37 motions for certain negative inferences made on the Defendants because the missing medical records for the period of 1986 to 1995 is highly prejudicial to Plaintiff. The Court withheld the rulings on the motions but ordered the parties to proceed with the Summary Judgment motion practice.

## II.    SUMMARY OF ARGUMENT

Plaintiff respectfully requests this Court grant Summary Judgment in his favor. Plaintiff Gillis' original complaint describes that he was forcibly medicated with psychotropic medications starting in 1987 and that "the side effects of the psychotropic medications [are] responsible for his mood swings." He also stated that the irrational behaviors caused by the improper psychotropic medications resulted in four additional charges while in prison and 27 years of additional sentence. Forced-medication of Plaintiff with these psychotropic medications without proper diagnosis constitutes cruel and unusual punishment and is a violation of the 8th Amendment as well as a violation of 14th Amendment due process.

It is undisputed that the Plaintiff Gillis' medical records are the key evidence to establishing whether Defendants had the proper reasons to justify and followed the proper procedures to medicate Plaintiff Gillis. Both Defendants and Defendants' medical providers have failed to produce the relevant medical records, namely the records from 1986 to 1995. The discovered existing medical records indicate that continuous psychotropic medication of Mr. Gillis started at least as early as, if not earlier than, January 1996 (D01134). But there is no proof as to why such medications were given to Mr. Gillis. The State's earliest proof to show the medication was proper, i.e., the

6

Superior Court Order dated March 31, 1999 (D00732–733), was issued more than three years after the medication in 1996 and about twelve years after the alleged psychotropic medications started in 1987.

The State has a 60-year inmate medical record retention policy (Mr. Oldigs' Deposition Transcript, p. 15). As the legal owner of the medical records, the State has the ultimate responsibility to police its current and past medical service providers to follow the policy and have the suitable procedures in place in maintaining the medical records.

The State readily admits and boasts that it delivers inmate health care in accordance with the standards set by the nationally recognized accrediting body, National Commission on Correctional Health Care (NCCHC); and all of its institutions have been accredited by the NCCHC since 1986. The NCCHC standards clearly require documentation for new inmates' initial health screen and for follow-up health assessment, all of which include mental health conditions. These crucial documents are absent from Mr. Gillis' medical records. In addition, to justify the administration of forced psychotropic medication, the standards specifically require documentation of the reasons for forcing the medication. There is no evidence of such documentation to show why Mr. Gillis was given psychotropic medications. The State's evidence, the Superior Court Order dated March 31, 1999, can not be used as an adequate proof to show the continuous medications started January 1996, let alone to justify the forced medications starting 1987. The March 31, 1999 Superior Court Order does not justify any earlier medication since the side effects of the long-term improper psychotropic medications might have caused the condition that underlay the Superior Court's order. Plaintiff. Without having the contemporaneous medical records to justify the need for such medication, its dose,

frequency and any other medical precaution to be taken, there is simply no evidence to show the legal justification for the forced administration of such psychotropic medication.

If the State is permitted to use the March 31, 1999 Superior Court Order as the proof to show the forced medication was proper from the beginning, namely Mr. Gillis was not capable of taking properly prescribed medications, then how could the State charge and sentence Mr. Gillis, not once, but four additional times, when he was being forcedly medicated?  The State cannot be allowed to hide behind its negligence and benefit from it as a legitimate defense in the pending case to the serious detriment of the Plaintiff.  Summary Judgment in favor of the Plaintiff should be granted and the defendants should be held liable for improperly administering forced psychotropic medication on Plaintiff.

## III.    STATEMENT OF FACTS

### A.    The State is Legally Responsible for Maintaining Inmates' Medical Records and Has a Sixty-Year Medical Record Retention Policy

It is the State's responsibility to ensure proper medical record maintenance.  This Court acknowledged this responsibility at the November 11, 2007 hearing when it stated that "it's obviously not the prisoner's obligation to maintain his records.  There is obviously an obligation on the part of whoever the State is hiring to provide the medical care or the State itself…."  (See D.I. 135, p. 23).

The State is the legal owner of the prisoner medical records and has a 60-year record retention policy (D.I. 135, p. 9, ln. 17).  The medical records are kept on State's site (Mr. Oldigs' Deposition Transcript, p. 17, ln. 25).  To ensure the continuity of care, a medical provider coming off the contract with the State is required to hand over the medical records to the next provider (Mr. Oldigs' Deposition Transcript, p. 17, lns. 9–17).

8

As the legal owner of the medical records, the State bears the ultimate responsibility to ensure that the incoming and outgoing medical providers follow the proper rules and procedures in compliance with the State's record retention policy.

**B.    By State's Own Admission, State's Prison Health Care Providers Have Been in Compliance with the National Commission on Correctional Health Care (NCCHC) Standards Since 1986**

When the State of Delaware initially incarcerated Plaintiff Gillis in 1986, CMS was the medical provider for the State. (D01434). The State required CMS to have the National Commission on Correctional Health Care (NCCHC) accreditation. Defendant Stan Taylor stated that "[t]he NCCHC is the nationally accrediting body for health care service providers. In fact, all institutions in the Delaware Department of Correction have been accredited by the NCCHC since 1986." (Exhibit C, Stan Taylor's Response to Inmate Health Care Articles, presented to the New Journal on September 30, 2005). Therefore, CMS, as the medical provider from 1986-1995, was obligated to adhere to NCCHC standards in order to provide adequate health care and ensure continuity of care. NCCHC standards contain essential provisions for maintaining medical records including medical record format, confidentiality of medical records, and retention of medical records (Exhibit D, Standards for Health Services in Prisons, P-65 to P-67). It is the Defendants' responsibility to ensure CMS complied with State's policy and the NCCHC standards. This Court should not allow Defendants to avoid their responsibility for the missing medical records by shifting the blame to its contracted medical providers or contending that the missing records never existed.

9

**C.     The NCCHC Standards Require Proper Documentation and Maintaining Inmates' Medical Records**

It is beyond reason that Plaintiff Gillis could have been incarcerated for about 10 years without having had any medical treatment documented in his medical records. NCCHC Standards, which CMS was obligated to follow, require "screening to be performed by qualified health care personnel on all new inmates (including transferees) immediately upon their arrival at the prison." (Exhibit D, P-30).  The NCCHC Standards also required providers to perform a health assessment "within 7 days after inmate arrives at the prison" and a mental health evaluation "within 14 days of admission." (Exhibit D, P-32 and P-33).  The initial screen and the follow-up health assessment both include mental conditions.  The documentation for this intake screening and the follow-up health assessment for Mr. Gillis are missing from the produced medical records.

NCCHC Standards clearly state that "[a]t a minimum, the medical record file contains these documents:

> problem list;
> receiving screening and health assessment forms;
> all findings, diagnoses, treatments, and dispositions;
> prescribed medications and their administration;
> reports of laboratory, x-ray, and diagnostic studies;
> progress notes;
> consent and refusal forms;
> release of information forms;
> discharge summary of hospitalizations;
> reports of dental, psychiatric, and other consultations;
> special treatment plan, if any;
> place, date, and time of each medical encounter;
> signature and title of each documenter."

(Exhibit D, P-64).  Both the initial screening and follow-up health assessments are explicitly required to be present in the medical record file.  Moreover, according to the

initial complaint, Defendants first subjected Plaintiff Gillis' to psychotropic medications

in 1987 consisting of Haldol injections, Haldol pills, Grodon pills, Inderal pills, and

Cogentine, which caused serious side effects including blurred vision and wild mood

swings (D.I. 2, ¶27).  Soon afterwards, Plaintiff Gillis complained of the effects of the

psychotropics.  Defendants ignored Plaintiff Gillis' complaints and continued to

administer him with psychotropics since that time (Id., ¶28 and 29).  The medical records

produced by Defendants bear no record of Plaintiff Gillis' intake health screening, health

assessment, his continued administration of psychotropic medications, or any justification

for the prescription of those psychotropic medications, all of which should have been

documented in his medical records according to NCCHC Standards (Exhibit D, P-64).

    As for forced administration of psychotropic medications, the NCCHC standards

specifically require documentation in the medical records as to "the reason for the

proposed forcing of medication, including other treatment attempted."  (Exhibit D, P-70).

No such documentation is the produced medical records for Mr. Gillis.

    The deposition statements of the State's medical records custodian confirm that

the missing medical records should have been be in Defendants' possession, but they are

not.  Those records should indicate the medical basis for administering the drugs to

Plaintiff (Mr. Oldigs' Deposition Transcript, p. 18, ln. 20).

## IV.    ARGUMENT

### A.    <u>Standards for Summary Judgment</u>

    Under Fed. R. Civ. P. 56, the moving party is entitled to summary judgment if it

can demonstrate that:  (1) there is no genuine dispute as to any material fact; and (2)

summary judgment is appropriate as a matter of law. *Anderson v. Liberty Lobby Inc.*, 477

11

U.S. 242, 248 (1986). Under Third Circuit precedent, "[a] disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law. . . . Thus, while the facts must be viewed in the light most favorable to the nonmoving party and all inferences must be drawn in that party's favor, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992) (citations and internal quotations omitted). Moreover, the evidence supplied by the nonmoving party must be more than "mere allegations." *Olson v. General Elec. Aerospace*, 101 F.3d 947, 951 (3d Cir. 1996).

### B.    Defendants' Failure to Produce the Missing Medical Records Is Highly Prejudicial and Hinders the Administration of Justice

Failure to produce the Plaintiff's medical records from 1986 to 1995 is highly prejudicial to Mr. Gillis. There is no dispute that these records are lost and their critical nature to this case. The missing medical records are the only means available to prove or disprove the facts asserted in the original complaint. Clearly, it is not Plaintiff Gillis' responsibility to ensure the records are properly kept. The State, as the legal owner of the records, is ultimately responsible.

The State attempts to use a "Back to the Future" argument to avoid its liability. The State focuses on Plaintiff's diagnosis and treatments in or after 1999, i.e., the Superior Court Order of March 31, 1999. But the key issue is the forced administration of psychotropic drugs starting in 1987 (See Original Complaint, D.I. 2 at ¶27, Amended Complaint, D.I. 25 at ¶5).

12

This Court must accept the allegations in the Complaint at face value unless the State can prove otherwise. The pleaded forced administration of unwanted, dangerous drugs starting in 1987 is a valid – indeed a compelling – cause of action. Plaintiff's interest in avoiding involuntary administration of psychotropic drugs is protected under the Fourteenth Amendment's Due Process Clause. *Riggins v. Nevada*, 504 U.S. 127, 134 (1992). As the existing medical records indicate, Mr. Gillis was subject to continuous psychotropic medications at least as early as January 1996, if not earlier. However, there is no evidence in the produced medical records to show the reason for the medication. The only evidence of proper medication the State is relying on was dated more than three years after the fact.

If the State is permitted to assert that the psychotropic medications on Mr. Gillis were proper from the start, the State is essentially asserting that Mr. Gillis did not have the mental capacity to exercise judgment. But the State charged Mr. Gillis, who was forced on psychotropic medications four additional times, again a violation of the rights protected under the 8th and 14th Amendments.

### C.   Improper Psychological or Psychiatric Treatment is a Violation of Mr. Gillis' Constitutional Rights

Under the Eighth Amendment, prisons must provide humane conditions of confinement, which include adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Failure to provide adequate care to address the serious medical needs of inmates can constitute deliberate indifference, a violation of the Eighth Amendment prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 27 (1976). The responsibility to provide adequate medical care includes mental health care. *Inmates*

13

*of Allegheny County Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979). The State is constitutionally required to provide adequate mental health care to inmates with serious mental or emotional disturbances. *Tillery v. Owens*, 907 F.2d 418 (3d Cir. 1990). The key to determining whether the State has provided constitutionally adequate mental health care depends on whether inmates have reasonable access to "medical personnel qualified to diagnose and treat such illnesses or disturbances." *Inmates of Allegheny County Jail*, 612 F.2d at 763.

Forced administration of antipsychotic drugs on inmates creates an interest that is protected by the Due Process Clause of the 14th Amendment. *Riggins v. Nevada*, 504 U.S. 127 (1992). The State has the obligation to demonstrate the both the need for such a medication and its medical appropriateness. Id.

In the present case, the produced medical records show that Mr. Gillis was put on continuous psychotropic medications at least as early as January 1996, if not earlier, without any evidence of proper diagnosis. Such an improper psychotropic medication constitutes a violation of Mr. Gillis' rights protected by the 8th and 14th Amendments.

**D.    The State Violated Its Own Medical Record Retention Policy**

As illustrated above, the State has a 60-year inmate medical record retention policy. If that policy had been followed, Mr. Gillis' medical records from 1986 to 1995 should have been located and accounted for, but they are lost. The State clearly violated its record retention policy and should be held liable.

**E.    The States Failed to Follow the NCCHC Standards**

Contrary to the public admission by the State, the State failed to follow the NCCHC standards, which clearly require documentation of medical screen, follow-up

14

health assessment, and reasons for forced psychotropic medications. The fact that these records are missing is the proof of State's failure to follow the NCCHC standards.

F.     **The State Failed to Police Its Prison Medical Service Providers In Compliance with State's Policy and NCCHC Standards**

As the legal owner of inmates' medical records, the State is obligated to police its prison medical service providers in their compliance with State's record retention policy and the NCCHC standards. The current and past providers for the relevant period cannot account for the missing medical records and cannot show any evidence as to how, when, and what amount of inmates' medical records being passed from one medical provider to the next. The State failed to ascertain the providers properly maintain and handle the medical records, even it is required for maintaining the continuity of inmates' health care.

## V.    CONCLUSION

As the foregoing demonstrates, there is no material dispute of fact at issue in this case and Mr. Gillis is entitled to judgment as a matter of law.  Accordingly, Mr. Gillis respectfully requests that this Court grant summary judgment in his favor and find Defendants liable of improperly forced psychotropic medications on Mr. Gillis in violation of civil rights under 42 U.S.C. §1983.

September 2, 2008

Respectfully submitted

_/s/ Zhun Lu_
Zhun Lu (#4427)
CONNOLLY BOVE LODGE & HUTZ
P.O. Box 2207
Wilmington, DE  19899-2207
Telephone:        (302) 888-6207
Facsimile:         (302) 658-5614
Email:              ZLu@cblh.com

Attorney for Plaintiff

632419

16

## CERTIFICATE OF SERVICE

I, Zhun Lu, hereby certify that on the 2nd day of September, 2008, a true copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and the document is available for viewing and downloading from CM/ECF:

> Erica Y. Tross, Esquire
> State of Delaware
> Department of Justice
> Carvel State Building
> 820 N. French Street
> Wilmington, Delaware 19801

> /s/ Zhun Lu
> Zhun Lu, Esquire (#4427)
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, Delaware 19899
> Telephone: (302) 884-6262
> Fax: (302) 658-5614
> Attorney for Plaintiff
> Email: zlu@cblh.com