**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VURNIS L. GILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 04-921-SLR |
| v. | ) | |
| | ) | Jury Trial Requested |
| | ) | |
| STAN TAYLOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**STATE DEFENDANTS' OPENING BRIEF
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
820 N. French Street
Wilmington, DE  19801
(302) 577-8400
    Attorney for the State Defendants

Dated:  September 2, 2008

## TABLE OF CONTENTS

Table of Citations ……………………………………………………….............    iii

Nature and Stage of the Proceedings ………………………………………………    1

Summary of the Argument ……………………………………………………………    5

Statement of the Facts ……………………………………………………………...    7

Argument ………………………………………………………………………..    12

    **I.**    **Gillis Is Prohibited From Pursuing His Lawsuit Because He Failed To Pursue His Claims Within The Two Year Statute Of Limitations And There Are No Extraordinary Circumstances That Require Tolling Of The Statute Of Limitations.** ……………    13

    **II.**    **The Court Lacks Subject Matter Jurisdiction Over This Case Under The *Rooker-Feldman* Doctrine Because Plaintiff's Federal Claims Are Inextricably Intertwined With Prior Delaware State Court Decisions.** ……………………………………………………..    18

    **III.**    **State Defendants Are Immune From Liability For Claims Against Them In Their Official Capacities Pursuant To The Eleventh Amendment.** ………………………………………………    21

    **IV.**    **This Court Should Grant Summary Judgment To The State Defendants As To All Claims In The Complaint Because The State Defendants Had No Personal Involvement In The Alleged Deprivation Of Gillis' Rights Nor Were They Deliberately Indifferent To His Plight.** …………………………………………...    23

    **V.**    **Summary Judgment Is Appropriate As To All Claims In The Complaint Because Plaintiff Failed To Exhaust All Available Administrative Remedies Prior To Filing His Complaint.** ………..    26

    **VI.**    **This Court Should Grant Judgment In Favor Of The State Defendants As To All of Plaintiff's Federal Constitutional Claims Because The Facts Of This Case Fail To Support His Bald Allegations Of Failure To Train, Violation Of Due Process And Deliberate Indifference.** …………………………………………..    27

        A.    Gillis cannot support a failure to train claim where he has failed to specify a training or policy that posed an unreasonable risk of harm to him and where he has failed to identify an alternative policy that could have prevented the harm that allegedly occurred. …………………………………    27

i

      B.     State Defendants did not violate Plaintiff's due process rights by forcibly medicating him where there is no evidence to show that the State Defendants had any involvement in administering medication to Gillis and where the record shows that forced medication is in Gillis' best interests. ……..   30

      C.     Gillis cannot maintain a deliberate indifference claim where the record shows that he has been provided access to medical care and treatment and simply disagrees with the treatment he has received. ……………………………………………..   32

**VII.**    **Summary Judgment Is Appropriate As To Plaintiff's State Tort Claims Because The State Defendants Are Immune From Liability Under The State Tort Claims Act And Because There Is No Evidence To Support Plaintiff's Claims Of Assault And Battery, Retaliation Or Civil Conspiracy.** ……………………   34

      A.     State Defendants are immune from liability for Gillis' state claims under the State Tort Claims Act. ……………………..   34

      B.     There is no evidence in the record to support Gillis' allegations of violation of his state rights. ……………………   35

            1.   *There is no basis for an assault and battery claim where the record shows that the State Defendants did not administer medications to Gillis.* …………………………   35

            2.   *Gillis cannot prove a retaliation claim where the record shows that he was receiving medication because he was schizophrenic and violent toward himself and others when he refused to take his medications.* ………………………   35

            3.   *State Defendants cannot be held liable for civil conspiracy where the record shows that they had no involvement in Gillis' diagnosis or treatment of schizophrenia.* ………….   36

**VIII.**   **State Defendants Are Immune From Liability For All Claims Against Them In Their Individual Capacities Pursuant To The Doctrine Of Qualified Immunity Because There Is No Evidence That They Violated Gillis' Clearly Established Constitutional Rights.** ………………………………………………...   37

**IX.**    **There Is No Basis For An Adverse Inference Instruction Where The State Defendants Did Not Intentionally Destroy The Medical Records And The Plaintiff Cannot Show He Has Suffered Prejudice By The Failure To Produce The Records.** ……………...   39

Conclusion …………………………………………………………………   40

# TABLE OF CITATIONS

## Cases

*AeroGlobal Capital Mgmt, LLC v. Cirrus Indus., Inc.,*
871 A.2d 428 (Del. 2005) …………………………………………….. 36

*Anderson v. Creighton,*
483 U.S. 635 (1987) …………………………………………........ 37-38

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) …………………………………………........ 12

*Beers Capitol v. Whetzel,*
256 F.3d 120 (3d Cir. 2001) …………………………………………... 30

*Brewer v. Quaker State Oil Refining Corp.,*
72 F.3d 236 (3d Cir. 1995) …………………………………………. 39

*Brookins v. Williams,*
402 F.Supp.2d 508 (D. Del. 2005) …………………………………. 23

*Brzoska v. Olson,*
668 A.2d 1355 (Del. 1995) …………………………………………… 35

*Buchanan v. Gay,*
491 F.Supp.2d 483 (D. Del. 2007) …………………………………. 18

*Carter v. Exxon Company USA,*
177 F.3d 197 (3d Cir. 1999) …………………………………........ 12

*Durmer v. O'Carroll,*
91 F.2d 64 (3d Cir. 1993) …………………………………………... 32

*Edelman v. Jordan,*
415 U.S. 651 (1974) …………………………………………... 21

*Estelle v. Gamble,*
429 U.S. 97 (1976) …………………………………………. 32-33

*Exxon Mobil Corp. v. Saudi Basic Indus Corp.,*
544 U.S. 280 (2005) …………………………………………... 18

*FOCUS v. Allegheny County Court of Common Pleas,*
75 F.3d 834 (3d Cir. 1996) …………………………………………. 18

*Freedman v. City of Allentown,*
    853 F.2d 1111 (3d Cir. 1988) ……………………………………………….    29

*Gay v. Petsock,*
    917 F.2d 768 (3d Cir. 1990) …………………………………………….........    23

*Hafer v. Melo,*
    502 U.S. 21 (1991) …………………………………………………………    22

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) …………………………………………………...........    37

*In re Wechsler,*
    121 F.Supp.2d 404 (D. Del. 2000) ………………………………………….    39

*Johnson v. Cullen,*
    925 F.Supp. 244 (D. Del. 1996) .....................................................................    13

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) ……………………………………………………...    29

*Lake v. Arnold,*
    232 F.3d 360 (3d Cir. 2000) ……………………………………………...    14-15

*McLaughlin v. Copeland,*
    455 F.Supp. 749 (D. Del. 1978) …………………………………………….    36

*Mitchell v. Horn,*
    318 F.3d 523 (3d Cir. 2003) ……………………………………………...    35-36

*Moody v. Kearney,*
    380 F.Supp.2d 393 (D. Del. 2005) ………………………………………….    13-15

*Oshiver v. Levin, Fishbeni, Sedran & Berman,*
    38 F.3d 1380 (3d Cir. 1994) ……………………………………………...    14

*Pennsylvania v. Porter,*
    659 F.2d 306 (3d Cir. 1981) …………………………………………….........    23

*Porter v. Nussle,*
    534 U.S. 516 (2002) …………………………………………………...........    26-27

*Positran Mfg, Inc. v. Diebold, Inc.,*
    2003 WL 22998139 (D. Del. May 15, 2003) ……………………………….    39

*Riggins v. Nevada*,
504 U.S. 127 (1992) ……………………………………………………... 31

*Rode v. Dellarciprete*,
845 F.2d 1195 (3d Cir. 1988) ……………………………….............. 23

*Rouse v. Plantier*,
182 F.3d 192 (3d Cir. 1999) ……………………………………......... 32

*Saucier v. Katz*,
533 U.S. 194 (2001) ……………………………………….............. 38

*Sample v. Diecks*,
885 F.2d 1099 (3d Cir. 1989) ……………………………………… 23-24, 28

*Schmid v. Milwaukee Electric Tool Corp.*,
13 F.3d 76 (3d Cir. 1994) ……………………………………….... 39

*Scott v. Harris*,
-- U.S. --, 127 S.Ct. 1769 (2007) ……………………………………… 12, 38

*Seminole Tribe of Florida v. Florida*,
517 U.S. 44 (1996) ……………………………………………… 22

*Valenti v. Mitchell*,
962 F.2d 288 (3d Cir. 1992) ……………………………………….... 18

*Vick v. Haller*,
512 A.2d 249 (1986) ……………………………………………….. 37

*Wallace v. Kato*,
-- U.S. --, 127 S. Ct. 1091 (2007) ……………………………………... 13

*Washington v. Harper*,
494 U.S. 210 (1990) ……………………………………………... 31

*Will v. Michigan Dept. of State Police*,
491 U.S. 58 (1989) ……………………………………………… 22

*Wilson v. Shumway*,
264 F.3d 120 (1st Cir. 2001) …………………………………….. 18-19

*Woloszyn v. County of Lawrence*,
396 F.3d 314 (3d Cir. 2005) …………………………………….... 28-29

*Woodford v. Ngo,*
     -- U.S. --, 126 S.Ct. 2378 (2006) …………………………………………… 26

## **Statutes, Rules and Other Authority**

10 *Del. C.* § 4001 …………………………………………………………………... 34

10 *Del. C.* § 8119 …………………………………………………………………... 13

42 *U.S.C.* § 1983 …………………………………………………………………… *passim*

42 *U.S.C.* § 1997e(a) ……………………………………………………………….. 26

Federal Rule of Civil Procedure 56(c) …………………………………………... 12

Federal Rule of Evidence 702 ………………………………………………………… 29

United State Constitution, Eleventh Amendment …………………………………….. 21

## NATURE AND STAGE OF THE PROCEEDINGS

On August 4, 2004, Plaintiff Vurnis Gillis, proceeding *pro se*, filed a complaint initiating the above-captioned matter (the "Complaint").  (D.I. 2).  Gillis alleged in his Complaint that the defendants violated several of his federal constitutional rights and committed various torts against him in violation of state law.  Along with his Complaint Gillis filed a Motion for Appointment of Counsel.  (D.I. 3, filed 8/4/04).  On October 6, 2005, the Court reviewed Gillis's Complaint pursuant to 28 U.S.C. § 1915.  (D.I. 23).  After review the Court dismissed Plaintiff's claims against Judge Toliver and dismissed as frivolous Plaintiff's access to court claims.  (*Id.*).

Approximately one week after the Court's decision, on October 14, 2005 Gillis filed an Amended Complaint adding additional defendants but no additional allegations.  (D.I. 25).  The Court dismissed the additional defendants and the Amended Complaint in its entirety and ordered that the case proceed on the original Complaint.  (D.I. 71).

On January 17, 2006, Defendants Stanley Taylor, Paul Howard, Thomas Carroll, Elizabeth Burris, Lawrence McGuigan, David Holman ("NFN Holman"), Emily Stevenson, Ricky Porter ("NMN Porter"), Merissa McFadden, Jim Simms, Lise Merson, Mike Little, Edward Johnson, Maria Lyons ("NLN Maria"), Timothy Martin, Brian Engrem, and Osmar Sammander[1] filed a Motion To Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion to Dismiss").  (D.I. 66).

Prior to the Court's ruling on the Motion to Dismiss the Court appointed counsel for Gillis.  On May 3, 2006, the Court recognized the agreement of representation by Zhun Lu for Gillis. (D.I. 79).

---

[1]There is no indication that Defendants Charles Cunningham, Joseph Hodson, or John Doe Three have been served, waived service or waived their right to respond.

On July 24, 2006, before responding to the Motion to Dismiss and before the Rule 26(f) conference, counsel for the Plaintiff issued to the State Defendants Plaintiff's First Request for Production of Documents.  (D.I. 83).  Shortly thereafter, on August 15, 2006, State Defendants filed a timely response to Plaintiff's First Request for Production and produced over 600 pages of documents.  (D.I. 84).

Approximately one week later, on August 23, 2006, the Court ordered Plaintiff to file an answering brief to State Defendants' Motion to Dismiss.  (D.I. 85).  Prior to filing the answering brief, on August 28, 2006 counsel for the Plaintiff issued a subpoena for records to the Delaware Psychiatric Center ("DPC").  (D.I. 86).  The subpoena was returned executed the next day.  (D.I. 87).

On September 25, 2006, Plaintiff finally filed a response to State Defendants' Motion to Dismiss.  (D.I. 88).  State Defendants filed a reply brief on October 2, 2006.  (D.I. 89).  Before the Court could rule on the Motion to Dismiss, the case was designated as one to be assigned to the judge who filled the vacancy left by Judge Jordan.  (D.I. 92).  Pending reassignment the case was referred to the magistrate judge.  (*Id.*).

On March 7, 2007, Plaintiff's counsel issued a notice to take the 30(b)(6) deposition of a witness for the State Defendants.  (D.I. 94).  On May 22, 2007, the State Defendants made available for a 30(b)(6) deposition John Oldigs, the senior fiscal administrative officer of the Department of Correction ("DOC").

Before the Court ruled on the State Defendants' Motion to Dismiss, on May 18, 2007 the parties reached an agreement and entered into a Stipulation of Dismissal.  (D.I. 102)  Pursuant to the terms of the Stipulation of Dismissal the State Defendants agreed to withdraw their Motion to Dismiss but retain any and all defenses and affirmative defenses raised within the Motion to

2

Dismiss.  In addition the Plaintiff agreed to dismiss his claims against Mike Little, Ed Johnson, Maria Lyons ("NLN Maria"), Brian Engrem, Osmar Sammander, David Holman ("NFN Holman"), Lise Merson, Ricky Porter ("NMN Porter"), Timothy Martin, Merissa McFadden and Emily Stevenson.  The Court approved the Stipulation of Dismissal on May 21, 2007.  (D.I. 104).  Thus, only the medical defendants and State Defendants Stanley Taylor, Paul Howard, Thomas Carroll, Elizabeth Burris, and Jim Simms (the "State Defendants") remain as defendants.

On the same day the Court approved the parties' Stipulation of Dismissal, the Court entered a scheduling order in the matter.  (D.I. 103).  In accordance with the scheduling order, the deadline for discovery was January 21, 2008.  On May 29, 2007, the State Defendants served initial disclosures on the Plaintiff.  (D.I. 107).  Approximately two weeks later the State Defendants filed an answer to the Complaint.  (D.I. 109).  On June 13, 2007, Plaintiff served his initial disclosures.  (D.I. 110).

In accordance with the Federal Rules, on July 5, 2007 State Defendants supplemented their responses to Plaintiff's discovery requests by producing to Plaintiff an additional 800 pages of documents.  (D.I. 112).  State Defendants issued discovery requests to the Plaintiff on August 14, 2007.  (D.I. 117).

Six days later, on August 20, 2007 Correctional Medical Services, the current medical provider for the DOC, made Latisha Johnson available for a deposition by the Plaintiff.  Ms. Johnson is the medical records clerk who pulled Gillis' medical records from the Delaware Correctional Center (now known as the James T. Vaughn Correctional Center, hereinafter "JTVCC"), copied the records and sent them to counsel for the State Defendants for production.

On August 23, 2007, the magistrate judge held a teleconference regarding the case.  At the conference the magistrate judge ordered the State Defendants to send a letter to past DOC medical providers asking for any records in their possession for Gillis.  In addition Plaintiff's counsel was ordered to visit the JTVCC to view Gillis' medical file.  As a result of the teleconference and the Court's orders, the January 21, 2008 deadline for discovery was dropped.

Pursuant to the Court's orders, on October 19, 2007, the State Defendants sent letters to relevant past medical providers for the DOC asking for any and all medical records in their possession for Gillis.  (D.I. 128).  State Defendants received responses to their letters on or about October 29, 2007 and submitted a copy of the letters to the Court.  (D.I. 134).  Also on October 29, 2007, State Defendants produced to Plaintiff over 250 pages of documents they had obtained from the Delaware Psychiatric Center.  (D.I. 131).  Several months later on February 1, 2008, the case was reassigned from the Vacant Judgeship to the Honorable Sue L. Robinson.

On March 25, 2008, Plaintiff issued to State Defendants his Combined First Set of Requests for Admission, First Set of Interrogatories and Second Set of Requests for Production of Documents.  (D.I. 143).  After a teleconference with the parties, on April 23, 2008 the Court issued an order that the parties were to respond to all outstanding discovery requests by May 27, 2008.  (D.I. 145).  In addition, the Court ordered that discovery was due by August 1, 2008 and all dispositive motions were to be filed no later than September 2, 2008.  (D.I. 145).

In accordance with the Court's Scheduling Order, on May 27, 2008 the State Defendants filed their Responses to Plaintiff's Combined Discovery Requests.  (D.I. 147).  On September 2, 2008 the State Defendants filed their Motion for Summary Judgment.  This is State Defendants' Opening Brief in Support of their Motion for Summary Judgment.

## SUMMARY OF THE ARGUMENT

1.     According to his Complaint, Gillis first began receiving psychotropic medications in 1987.  The record fails to show the existence of any extraordinary circumstances prohibiting Gillis from filing his lawsuit regarding these medications within the two year statute of limitations for section 1983 actions.  As a result any claim that his receipt of medications was improper began to accrue in 1987.  Given that Gillis did not file his lawsuit until 2004 he failed to file within the statute of limitations period and he should be prohibited from bringing his claims.

2.     Gillis' federal civil rights claims are inextricably intertwined with orders issued over the past several years by the Delaware state courts.  As such this Court lacks the necessary subject matter jurisdiction to hear this case pursuant to the *Rooker-Feldman* doctrine.

3.     State Defendants are not considered "persons" for purposes of 42 U.S.C. § 1983. As a result, the Eleventh Amendment, in conjunction with the State of Delaware's sovereign immunity, protects the State Defendants from liability for the Plaintiff's claims.  Therefore this Court lacks jurisdiction over the State Defendants in their official capacities and the Plaintiff cannot maintain his claims against the State Defendants in their official capacities.

4.     Gillis' claim that the State Defendants violated his federal rights cannot survive summary judgment where he has failed to show that the State Defendants had any personal involvement in the alleged deprivation of his constitutional rights or that they were deliberately indifferent to his plight.

5.     Summary judgment is appropriate under the terms of the Prison Litigation Reform Act because Gillis failed to exhaust the administrative remedies available to him prior to filing his lawsuit.

6.      The Court should grant judgment in favor of the State Defendants as to Gillis' federal constitutional claims.  First, the Plaintiff has failed to specify a policy that the State Defendants did not use that would have prevented the harm to him that allegedly occurred.  Second, there is no evidence to prove that the State Defendants administered psychotropic medications to Gillis in violation of his due process or eighth amendment rights.  Finally, the record is void of any facts showing that the State Defendants were deliberately indifferent to Gillis' serious medical needs.

7.      Summary judgment is proper as to Plaintiff's state tort claims where the State Tort Claims Act immunizes the State Defendants from liability and where the facts of this case fail to support Plaintiff's claims of assault and battery, retaliation or civil conspiracy.

8.      The State Defendants properly performed their duties without violating Gillis' clearly established constitutional rights.  Therefore the State Defendants are protected from liability in their individual capacities for Gillis' claims by the doctrine of qualified immunity.

## STATEMENT OF THE FACTS

On August 26, 1986, Plaintiff Vurnis Gillis a/k/a Vurnis Jones began serving a 25 year sentence at the Howard R. Young Correctional Institution in Wilmington, Delaware for Robbery in the First Degree, Possession of a Deadly Weapon during the Commission of a Felony, Burglary in the Second Degree and Conspiracy in the Second Degree. (Appendix (hereinafter "A-) – 31)

### Gillis is Diagnosed with Schizophrenia and Prescribed Medications

Some time after his incarceration began doctors examined Gillis and diagnosed him with schizophrenia. (A-115, 117, 119). According to Plaintiff's Complaint, in 1987 Doctors Robinson and Weiss prescribed him psychotropic medications. (A-10 at ¶ 27). The medications included "Haldol Injections, Haldol Pills, Geodon Pills, Inderal Pills and Cogentine." (*Id*).

Plaintiff claims that he complained to both Doctors Robinson and Weiss that the medications he was taking were "causing severe side effects, blurred vision and wild mood swings." (*Id.* at ¶ 28). In response the doctors told him that "this was normal and that after awhile of taking these medications these side effects would go away, …." (*Id.* at ¶ 29). Plaintiff never alleges that he complained about his medications to any of the State Defendants.

On February 18, 1999, Plaintiff was transferred to the Delaware Psychiatric Center ("DPC") for evaluation and treatment. (A-174 at ¶ 2e). In March 1999 the Delaware Superior Court issued an order finding that Gillis had been evaluated and treated and that the opinion of the Forensic Evaluation team was that Gillis had "received the maximum benefit from said evaluation and/or treatment". (A-112-113). As a result the Court ordered that Gillis be returned back to the custody of the DOC and further ordered that Gillis "be required to take any medications and/or other treatments as directed by the Forensic Evaluation team." (*Id.*). On

April 8, 1999, Gillis was transferred from DPC back to a Delaware prison facility.  (A-174 at ¶ 2f).

Despite the Court's order, Gillis continued to refuse to take his medications.  (A-114-115).  As a result Gillis became violent toward himself and others.  (A-115).   Almost one year after leaving DPC, on March 24, 2000 Gillis took an inmate hostage.  (*Id.*).  Thereafter the DOC medical provider sought to obtain a court order involuntarily admitting Gillis to DPC.  (*Id.*).  Before the medical provider could obtain the order, Gillis attempted suicide.  (A-116-117).  After the suicide attempt Gillis was sent to Beebe Medical Center.  (A-116).  Doctors at Beebe confirmed Gillis' diagnosis of schizophrenia.  (*Id.*).  Nothing in Beebe's records, however, indicates that Gillis became schizophrenic as a result of the medication he was taking or that the medications the DOC medical providers had prescribed Gillis were improper.

In 2001 Gillis again began to refuse to take his medications.  (A-121-124).  Thereafter, on October 31, 2001, Gillis made another suicide attempt and was admitted to Kent General Hospital.  (A-127-132).   Records from Kent indicate that Gillis has a "long history of schizophrenia and noncompliance with medicines."  (*Id.*).  Moreover, although doctors at Kent recommended that Gillis' medication dosage be reduced, the doctors did not state that Gillis should be taken off of his medication.  (A-128).  Further, nothing in Kent's records indicates that Gillis' schizophrenia was a result of the medication he was taking or that the medications the DOC medical providers had prescribed Gillis were improper.

Following the second suicide attempt and requests from the DOC medical provider, the Delaware Superior Court in November 2001 reaffirmed its 1999 order that Gillis be "required to take any and all medications and/or other treatment as directed …."  (A-133).  Further the Court

stated that the order was to remain "in effect unless or until modified by order of this Court." (*Id.*).

In 2006, after again refusing to take his medication (A-143-157), Gillis was involuntarily committed to the DPC for evaluation and treatment. (A-158-172). He was released from the DPC on or about December 21, 2007.

### Gillis Commits Offenses While Incarcerated

Shortly after his incarceration began, starting in 1987, Gillis began committing crimes while in prison. In March 1988 Gillis pled guilty to assault in a detention facility. *State v. Gillis*, Cr. A. No. IN87-11-1119 (Del. Super. Ct.). (A-32-34). In 1990 he pled guilty to carrying a concealed deadly weapon and promoting prison contraband. *State v. Gillis*, Cr. A. No. IN89-10-1220 – 1222 (Del. Super. Ct.). (A-35-38). In 1991 he pled guilty to assault in the second degree. *State v. Gillis*, Cr. A. No. IN91-02-0159 (Del. Super. Ct.). (A-39-41). Finally, in July 2000 Gillis pled guilty to arson in the first degree. *State v. Gillis*, Cr. A. No. 99-11-0420 (Del. Super. Ct.). (A-42-44). It appears that Gillis did not have a trial with any of these charges. Rather he knowingly and voluntarily pled guilty to each crime. Moreover, it does not appear that Gillis alleged as a defense to these charges that the medications he was taking caused him to commit the crimes.

With respect to his last conviction for arson in the first degree, Plaintiff was represented by counsel. (*Id.*). During the course of the plea colloquy Plaintiff's counsel informed the court that Gillis had been in the State Hospital in April 1999 and was on medication and drugs. (A-46 at 22-23). Gillis' attorney went on to state that Gillis had told her that the drugs "do nothing for him and they generally have no effect on his taking the plea today." (A-47 at 1-2). The Court placed Gillis under oath and asked him a series of questions to determine his competence to enter

a guilty plea. Gillis denied that the medicines he was taking influenced his decision to enter a guilty plea. (A-49-50 at 21-1). In addition Gillis was found competent to enter a plea. (A-54-55 at 21-9). The Court accepted the guilty plea (A-55 at 21-22), and later sentenced Gillis. (A-57-68).

In 2005 Plaintiff filed a *pro se* appeal to his 2000 conviction claiming in part that he was under medication and not fully aware of his actions. *State v. Jones*, Defendant ID No. 9911013398 (R-1) (Del. Super. Ct.). (A-69-71). The Delaware Superior Court denied Plaintiff's appeal holding that Gillis "knowingly, voluntarily, and intelligently [entered] the guilty plea …." (*Id.*).

### Gillis Files Lawsuits on His Own Behalf

In 1989 – two years after he claims he began receiving psychotropic medications – Gillis filed a complaint in the Delaware District Court claiming that DOC officers violated his constitutional rights when they confiscated his Islamic prayer book and cap during a shakedown. *Gillis v. Watson, Coldburn*, 89-286-JJF (D. Del.). (A-72-78). Gillis filed the complaint *pro se*. Although the court later granted the defendants' motion for summary judgment, Gillis' complaint passed initial review and was not found frivolous.

Several years later, in 1996, Gillis filed in the Delaware District Court a petition for writ of habeas corpus. *Gillis v. Kearney, et al.*, 96-409-RRM (D. Del.). (A-79-98). Gillis again proceeded *pro se* and was able to type the petition and include facts and information to support his claims. Further Gillis was able to file papers so that he could proceed *in forma pauperis* and was successfully able to effect service upon the defendants.

In 2002 Gillis filed a section 1983 action *pro se* in the Delaware District Court. *Gillis v. Dr. Ko, et al.*, 02-1343-KAJ (D. Del.). (A-99-108). It appears from the record that the case did not proceed further only because Gillis failed to pay the filing fee.

On August 4, 2004 – approximately 17 years after he was initially prescribed psychotropic medications – Gillis filed the instant Complaint alleging that the defendants were violating his federal constitutional and state rights by administering to him psychotropic medications. Although Gillis filed the Complaint *pro se* the Complaint contains specific details about when Gillis was first prescribed medications, the names of the doctors who prescribed the medications and the names of the medications prescribed. (A-10 at ¶ 27-29). Further Gillis' Complaint contains detailed information regarding the convictions he pled guilty to over the years and the sentences he received for the convictions. (A-11-12). Moreover Gillis clearly states the nature of the relief he is seeking. (A-14-17).

# ARGUMENT

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). To obtain summary judgment the moving party must demonstrate that he has met the standards of Rule 56(c). *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, only disputes that affect the outcome of a lawsuit properly preclude the grant of summary judgment. *Id.*

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252. Further, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, -- U.S. --, 127 S.Ct. 1769, 1776 (2007).

The record in this case clearly demonstrates that the Court should grant judgment in favor of the State Defendants and against the Plaintiff on all claims. First, Gillis is prohibited from pursuing his claims because he failed to file his lawsuit within the relevant statute of limitations period. Second, this Court does not have subject matter jurisdiction over this case according to

the *Rooker-Feldman* doctrine because Gillis' federal claims are inextricably intertwined with prior state court decisions. Third, the State Defendants are immune from Plaintiff's allegations in both their official and individual capacities. Fourth, Gillis cannot show the State Defendants had any personal involvement in his receipt of psychotropic medications or that they were deliberately indifferent to his plight. Fifth, Gillis failed to properly exhaust his claims prior to filing the lawsuit in violation of the Prison Litigation Reform Act. Sixth, Gillis cannot establish that the State Defendants violated his federal constitutional rights. Finally, Gillis cannot show that the State Defendants violated his state rights. Given that the record fails to support any of Gillis' claims, summary judgment is appropriate.

**I.      Gillis Is Prohibited From Pursuing His Lawsuit Because He Failed To Pursue His Claims Within The Two Year Statute Of Limitations And There Are No Extraordinary Circumstances That Require Tolling Of The Statute Of Limitations.**

According to his Complaint Gillis first received psychotropic medications in 1987 by Doctors Robinson and Weiss. (A-10 at ¶ 27). To the extent then that Gillis alleges his initial receipt of such medications was improper Gillis should have filed his lawsuit within two years of the date of his initial receipt of these medications. Gillis did not file a lawsuit within this time frame and is therefore barred by the statute of limitations from pursuing this lawsuit.

Title 42, section 1983 of the United States Code – the section under which Gillis brings this lawsuit – does not have an explicit limitations period. As a result, the United Supreme Court has held that the relevant statute of limitations for section 1983 actions is the statute of limitations that the state provides for personal-injury torts. *Wallace v. Kato*, -- U.S. --, 127 S.Ct. 1091, 1094 (2007). In Delaware the statute of limitations for personal injury claims is two years. 10 *Del. C.* § 8119; *Johnson v. Cullen*, 925 F.Supp. 244, 248 (D. Del. 1996). Thus, "'section 1983 claims are subject to a two year statute of limitations.'" *Moody v. Kearney*, 380 F.Supp.2d

393, 397 (D. Del. 2005) (quoting *Lamb-Bowman v. Del. State Univ.*, 1999 WL 1250889, at *8 (D. Del. Dec. 10, 1999)).

"Although state law determines the applicable limitations period for claims under section 1983, federal law determines the date of accrual of a section 1983 cause of action." *Id.* The statute of limitations will begin to run when the action accrues. *Id.* In a federal cause of action a claim accrues "as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury." *Oshiver v. Levin, Fishbeni, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). The Third Circuit has determined this to mean that the action accrues when "'the first significant event necessary to make the claim suable' occurs." *Lake v. Arnold*, 232 F.3d 360, 366 (3d Cir. 2000) (quoting *Ross v. Johns-Manville Corp.*, 766 F.2d 823, 826 (3d Cir. 1985)). Thus, barring any tolling that may apply, Gillis' claim was suable in 1987 – the year Gillis claims doctors improperly began giving him psychotropic medications.

There is a limited exception to the two year statute of limitations – the federal equitable tolling doctrine. "Equitable tolling stops the statute of limitations from running when the date on which the claim accrued has already passed." *Id.* at 370. The doctrine of equitable tolling only applies to suits brought under the federal civil rights statutes when "the state statute of limitations would otherwise frustrate federal policy." *Id.* The Supreme Court holds that the doctrine of equitable tolling should be invoked sparingly. *Moody*, 380 F.Supp.2d at 397 (citing *Seitzinger v. Reading Hosp & Med. Ctr.,* 165 F.3d 236, 240 (3d Cir. 1999); *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)).

Equitable tolling should generally be used in only three limited circumstances – where "(1) [] a defendant actively misleads a plaintiff with respect to her cause of action; (2) [] the plaintiff has been prevented from asserting her claim as a result of other extraordinary

circumstances; or (3) [] the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Moody*, 380 F.Supp.2d at 397 (citing *Lake*, 232 F.3d at 370 n.9). Gillis appears to allege that in light of the fact that he was on psychotropic medications since 1987 the second circumstance applies – that is he has been "prevented from asserting his claim as a result of other extraordinary circumstances."

"[M]ental incompetence is not *per se* a reason to toll the statute of limitations in federal actions." *Lake*, 232 F.3d at 371. But equitable tolling will apply where the plaintiff "'could not by the exercise of reasonable diligence have discovered essential information bearing on his claim.'" *Moody*, 380 F.Supp.2d at 398 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1990)).

In *Moody* the plaintiff was an inmate in the Delaware Department of Correction. Throughout his incarceration he was treated for schizophrenia. *Moody*, 380 F.Supp.2d at 395. In 1999 plaintiff was administered drugs for treatment of his schizophrenia that included a warning that the patient was not to become overheated during hot weather. *Id.* Some time during the summer of 1999 plaintiff became overheated. As a result, plaintiff suffered a heat stroke and lapsed into a coma. *Id.* Subsequently, plaintiff received brain damage. At the time of the lawsuit he was wheelchair bound and unable to communicate effectively. *Id.*

In reviewing the *Moody* plaintiff's claim that equitable tolling should apply, this Court held that in light of plaintiff's condition extraordinary circumstances prevented him from bringing his claims in a timely manner. *Id.* at 397. Thus the equitable tolling doctrine applied because plaintiff "could not by the exercise of reasonable diligence have discovered essential information bearing on his claim." *Id.* at 398. The facts in Gillis' case, however, are clearly

distinguishable from the *Moody* case and the doctrine of equitable tolling should not apply to toll the statute of limitations here.

In Gillis' case the record reflects that despite his diagnosis of schizophrenia and having to take psychotropic medications, Gillis was capable of filing lawsuits and asserting claims on his own behalf in court.  (A-72-108).  In fact, in 1989 – the last year Gillis had to file an action regarding his medication – Gillis filed a lawsuit in the Delaware District Court claiming that certain DOC officers violated his constitutional rights when they confiscated his Islamic prayer book and cap during a shakedown.  (A-72-78).  Gillis' claim passed the court's initial review and the case was permitted to proceed.  Although Gillis lost on summary judgment, it is clear that he was fully capable of filing a valid lawsuit in federal court that was not dismissed as frivolous.

In 1996 Gillis filed with the Delaware District Court a petition for writ of habeas corpus.  (A-79-98).  The petition was typed by Gillis and contained detailed allegations and facts supporting his claims for relief.  (A-82-87).  In addition Gillis was able to submit an application to proceed *in forma pauperis* along with the necessary financial information to support his application.  (A-88).  Gillis was also able to successfully effect service.

In 2002 Gillis filed a section 1983 action in the Delaware District Court.  (A-99-108).  This case, in conjunction with the 1989 lawsuit and the 1996 petition, clearly demonstrate that Gillis has been fully capable of filing lawsuits on his own behalf, despite his taking psychotropic medications.

Further, Gillis' continued acceptance of guilty pleas over the years demonstrates that having to take psychotropic medications has not been a bar to Gillis' ability to understand his rights and demonstrate his competence.  For each of the charges he incurred while incarcerated, Gillis knowingly and voluntarily pled guilty.  (A-32-44).  For example in 1999, Gillis pled guilty

to the charge of arson in the first degree.  (A-43).  The transcript of the plea colloquy shows that despite being on medication Gillis swore under oath that he was competent to plead guilty and that the medications he was taking were not influencing his decision.  (A-45-56).  In fact, the transcript clearly reflects Gillis' competency:

> The Court:     You were evaluated at the hospital.  Do you recall being evaluated at the hospital.
>
> The Defendant (Gillis):     Yes.
>
> The Court:     And the results of the evaluation are that you are competent to stand trial and you know what you are doing for criminal responsibility purposes.
>
> Gillis:     Yes, I do.  But that doesn't excuse the fact that I am going through this conspiracy within the prison system, though.
>
> The Court:     My final question to you is do you want to go ahead with your plea or do you want to have a trial.
>
> Gillis:     I will go ahead with the plea.
>
> The Court:     All right.  It is your choice.  Do you understand? This is what you want to do?
>
> Gillis:     Yes, I do.

(A-55 at 1-20).  Clearly Gillis was competent and understood the process.  Moreover, Gillis expressly admits that he knew what he was doing for criminal responsibility purposes.

The facts of this case have no similarity to the facts in *Moody*.  During the 17 years prior to filing this lawsuit Gillis was competent and possessed the wherewithal to file lawsuits on his own behalf.  There were no extraordinary circumstances preventing Gillis from filing a lawsuit regarding his psychotropic medications.  Therefore, the Court should find that the doctrine of equitable tolling does not apply and the two year statute of limitations for Gillis' claim accrued in 1987 when Gillis admits he was first placed on psychotropic medications.

**II.    The Court Lacks Subject Matter Jurisdiction Over This Case Under The *Rooker-Feldman* Doctrine Because Plaintiff's Federal Claims Are Inextricably Intertwined With Prior Delaware State Court Decisions.**

State Defendants assert that this Court does not have jurisdiction over this matter because the issues in the federal case are inextricably intertwined with decisions issued by the Delaware state courts deeming Plaintiff's forced medication necessary.

"Federal district courts lack subject matter jurisdiction … to evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'" *Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir. 1992) (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983)).  This doctrine, also knows as the *Rooker-Feldman* doctrine, deprives federal courts of jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

An action in federal court is inextricably intertwined with a state court decision when the "federal action requires determining that the state court decision is wrong or would void the state court's ruling". *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996).  Where these circumstances exist the federal court does not have the necessary subject matter jurisdiction to hear the lawsuit.  *Id.*  Moreover a plaintiff cannot "invoke federal jurisdiction merely by couching his claims in terms of a civil rights action." *Buchanan v. Gay*, 491 F.Supp.2d 483, 493 (D. Del. 2007).

In *Wilson v. Shumway*, 264 F.3d 120 (1st Cir. 2001), the plaintiff, like Gillis, suffered from mental illness including paranoid schizophrenia.  *Wilson*, 264 F.3d at 121.  As a result of his conduct the plaintiff was involuntarily confined to a hospital and the State of New Hampshire

sought, in state probate court, the appointment of a guardian due to the plaintiff's refusal to take antipsychotic medications. *Id.* A few months before the probate court decided to appoint a guardian, the plaintiff filed an action in federal court seeking injunctive relief and monetary damages claiming that the forced administration of antipsychotic medications violated his constitutional rights. *Id.* Shortly thereafter the plaintiff was released from the hospital and filed in state court a petition to terminate his guardianship. At the same time he filed a motion to stay the federal court proceeding pending a decision on his petition to terminate guardianship. *Id.* His petition to terminate guardianship and subsequent appeal in state court were both denied. Afterwards plaintiff lifted the stay in federal court and tried to pursue his claims. *Id.* at 122.

The district court dismissed plaintiff's case holding that the court lacked jurisdiction under the *Rooker-Feldman* doctrine. *Id.* Specifically the court found that the plaintiff's federal action was an "'attempt to appeal adverse rulings in the state guardianship proceedings.'" *Id.* (quoting *Wilson v. Shumway,* 2000 WL 1499469 (D. N.H. May 8, 2000)). The district court further held that "the claims that had been asserted in the federal case were 'inextricably intertwined' with those that were litigated in the guardianship proceeding because a favorable decision would require the district court to conclude that the probate court had erred in its opinion." *Id.* at 123 (citing *Wilson*, 2000 WL 1499469, at *2). The First Circuit, on appeal, affirmed the district court's dismissal of the case for lack of jurisdiction based on the *Rooker-Feldman* doctrine. *Id.* at 126.

Like the plaintiff's claims in *Wilson*, Gillis' claims are inextricably intertwined with his state court proceedings and should be dismissed for lack of subject matter jurisdiction. In March 1999, the Delaware Superior Court found that Gillis had been evaluated and treated by the DPC. (A-112-113). Based on the evaluation and treatment Gillis received at DPC the Superior Court

ordered that Gillis "be required to take any medications and/or other treatments as directed …."
(*Id.*).  The Superior Court reaffirmed its order in November 2001 by issuing another order again
stating that Gillis "be required to take any medications and/or other treatments as directed …."
(A-133).  This time the Court went a step further and stated that the order was to remain "in
effect unless or until modified by order of this Court."  (*Id.*).  It does not appear that Gillis ever
appealed these orders.

Three years after the Superior Court's last order Gillis filed the instant action in federal
court.  Gillis requests as relief, *inter alia*, that the Court issue an "injunction ordering the medical
and mental health staff to immediately stop bringing psychotropic medications to the plaintiff
and stop the Haldol injections…."  (A-16 at ¶ D).  Therefore, Gillis is essentially inviting the
federal court to review and reject the Delaware state court's 1999 and 2001 orders.  To the extent
then that Gillis wants a modification of the Superior Court's orders such relief should be sought
in the Delaware state courts and this Court does not have subject matter jurisdiction to hear this
lawsuit.

In his Complaint Gillis also asks that the federal court "expunge all disciplinary
convictions in Plaintiff's institutional file."  (A-16 at ¶ C2).  Presumably Gillis is asking this
Court to find that the guilty pleas found to be proper in the Delaware state courts were actually
improperly entered because he was on psychotropic medications at the time.  But again this is
inviting the federal court to review and reject Delaware state court decisions.  Such review and
rejection is improper under the *Rooker-Feldman* doctrine.

To the extent Gillis contends that his initial receipt of medications is at issue, that claim
still falls under the purview of the Delaware Superior Court's decisions.  The Delaware state
courts' orders have rested, in part, on evidence indicating that Gillis was properly diagnosed and

treated for schizophrenia. For this Court to now review and make a determination that Gillis' initial treatment was improper essentially states that the Delaware state courts were wrong in issuing the 1999 and 2001 orders and in finding Gillis competent to enter guilty pleas for the crimes he committed.

Clearly Gillis' claims in his Complaint are inextricably intertwined with many prior Delaware state court decisions. As a result this Court lacks the subject matter jurisdiction necessary to hear Gillis' claims pursuant to the *Rooker-Feldman* doctrine.

## III.    State Defendants Are Immune From Liability For Claims Against Them In Their Official Capacities Pursuant To The Eleventh Amendment.

Plaintiff filed suit against State Defendants in their official capacities. Because the State Defendants are immune from liability in their official capacities, summary judgment is appropriate.

The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the Eleventh Amendment does not, by its explicit terms, bar suits against a State by its own citizens, the United States Supreme Court has held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Further, where a State is not a named party in an action a suit may still be barred by the Eleventh Amendment where "'the action is in essence one for the recovery of money from the state,'" because "'the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.'" *Id.* (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945)).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 64 (1996). The United States Congress, however, can waive a state's sovereign immunity, and therefore, its Eleventh Amendment immunity, through the Fourteenth Amendment. *Id.* But, only a clear indication of Congress's intent to waive a state's immunity will produce this result. *Id.*

Title 42, section 1983 of the United States Code – the section under which the Plaintiff brings his suit – does not display a clear intent by Congress to waive a state's sovereign immunity. In fact, Congress's intent appears to be to the contrary as the statute facially allows suits only to be brought against persons. 42 *U.S.C.* § 1983. The State of Delaware and its agencies, like the DOC, are not considered "persons" as contemplated by 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore, the Eleventh Amendment and the state's sovereign immunity protect the State of Delaware from liability for claims brought by an individual filing a lawsuit pursuant to § 1983. *See, id.*

A suit against a state official in his official capacity is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus an immunity that is available to the State is also available to a state official in his official capacity. *Id.* Under federal law, State Defendants in their official capacities, like the State of Delaware, are not "persons" for the purposes of 42 U.S.C. § 1983. *Will*, 491 U.S. at 71. Because the State Defendants are not "persons" for purposes of § 1983, the Eleventh Amendment and the State of Delaware's sovereign immunity protect the State Defendants from liability. As a result, this Court lacks jurisdiction over the State Defendants in their official capacities, and the State Defendants are outside the class of

persons subject to liability under § 1983.  Therefore the Plaintiff cannot maintain his claims against the State Defendants in their official capacities and summary judgment is appropriate.

**IV.  This Court Should Grant Summary Judgment To The State Defendants As To All Claims In The Complaint Because The State Defendants Had No Personal Involvement In The Alleged Deprivation Of Gillis' Rights Nor Were They Deliberately Indifferent To His Plight.**

Summary judgment is appropriate as to all of Gills' claims against the State Defendants because the record fails to show that the State Defendants had any personal involvement in the medical treatment Gillis received or that they were deliberately indifferent to his plight.

To support a claim for a civil rights violation under § 1983 a plaintiff must show that the accused defendant had personal involvement in the alleged wrongs.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  A plaintiff must prove that the official "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct."  *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981) (Garth, J. concurring in part, dissenting in part).  In addition, this Court has held that, "Grievances are not enough to impute knowledge to [a] defendant."  *Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005) (quoting *Rode*, 845 F.2d at 1208).  Rather, to establish liability, a plaintiff must prove that a defendant personally directed, had actual knowledge of, or acquiesced in the alleged deprivation of his constitutional rights.  *Rode*, 845 F.2d at 1207.  Without such proof the defendant cannot be held liable.  *See Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990).

In a § 1983 action a supervisory official cannot be held liable solely under the theory of respondeat superior.  *Rode*, 845 F.2d at 1207.  Rather, to establish supervisory responsibility a plaintiff must show that the defendant was the moving force behind the alleged constitutional violation.  *Sample v. Diecks*, 885 F.2d 1099, 1116-17 (3d Cir. 1989).  "[A] 'person' is not the

23

'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' … has exhibited deliberate indifference to the plight of the person deprived." *Id.* at 1118.

The State Defendants had no personal involvement in the diagnosis of Gillis with schizophrenia, in prescribing him psychotropic medications or in administering psychotropic medications to him. (A-176-184). In fact State Defendants Carroll, Burris, Howard and Taylor do not even know Gillis nor have they ever had a conversation with Gillis. (A-176-182). Admittedly State Defendant Simms knows Gillis but he did not meet Gillis until the year 2000 – 13 years after Gillis first received psychotropic medications and one year after the Delaware Superior Court first ordered that Gillis be forced to take his medications. (A-183 at ¶ 2). Thus Gillis cannot show that any of the State Defendants were personally involved in his initial receipt of medication or in forcing him to take medication.

In his Complaint Gillis admits that Doctors Robinson and Weiss prescribed him psychotropic medications. (A-10 at ¶ 27). He also states that he complained about his medications to the doctors – not to the State Defendants. (*Id.* at ¶ 28). Therefore Gillis has failed to show that the State Defendants were personally involved in his receipt of psychotropic medications and summary judgment is appropriate.

Moreover, to the extent Gillis alleges the State Defendants should be held liable for his claims because of their supervisory roles, Gillis cannot support his claims for several reasons. First, many of the State Defendants did not assume supervisory roles until years after Gillis was diagnosed with schizophrenia and began receiving treatment. Stan Taylor was appointed Commissioner of Correction in 1995. (A-176 at ¶ 1). Although Taylor was the Deputy Warden of Sussex Correctional Institute in 1983, Gillis was not transferred to SCI until 1992. (A-173 at ¶ 2b). Thus Taylor did not have supervisory responsibilities over Gillis at the time Gillis was

initially diagnosed and prescribed medications.  Paul Howard became the Bureau Chief in 1996.
(A-178 at ¶ 1).  Thomas Carroll did not become the Warden of DCC until 2001.  (A-179 at ¶ 1).
Elizabeth Burris became a Deputy Warden in 1999.  (A-181 at ¶ 1).  Jim Simms never held a
supervisory position in DOC.  (A-183 at ¶ 1).  Thus Gillis cannot establish that the individual
State Defendants had supervisory responsibilities at the time he initially received psychotropic
medications.

Second, assuming, *arguendo*, that Gillis can establish that the State Defendants had
supervisory responsibilities he has failed to set forth any evidence showing that the State
Defendants were deliberately indifferent to his plight.  Gillis has been receiving mental health
treatment since his initial incarceration.  (A-10, 109-172).  He has been examined by doctors,
diagnosed and prescribed medications.  (*Id.*).  Moreover, Gillis has received treatment at the
DPC.  (A-112-113, 159-172).  In fact within the past few years Gillis has been housed at DPC on
several occasions for evaluation and treatment.  (*Id.*).  Thus Gillis cannot establish that the State
Defendants have refused him access to care or denied him the ability to receive treatment.

Third, Gillis has failed to produce any evidence showing that the State Defendants were
the moving force behind any alleged improper medication that he received.  In fact, as already
demonstrated, the State Defendants were not involved in the diagnosis or treatment of Gillis and
not one of them, except Simms, even knows Gillis.  (A-176-184).

Gillis cannot establish that the State Defendants were personally involved in the alleged
improper administration of psychotropic medications.  Moreover, he cannot prove that the State
Defendants were deliberately indifferent to his plight.  Therefore Gillis cannot assert a valid
claim under section 1983 and judgment should be awarded in favor of the State Defendants.

**V.    Summary Judgment Is Appropriate As To All Claims In The Complaint Because Plaintiff Failed To Exhaust All Available Administrative Remedies Prior To Filing His Complaint.**

Gillis is prohibited from bringing his claims by the Prison Litigation Reform Act ("PLRA") of 1995 because he failed to exhaust the administrative remedies available to him prior to filing his lawsuit.

The PLRA amended a variety of statutory provisions governing litigation by prisoners, including provisions under 42 *U.S.C.* § 1983. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). As a result of the revisions, incarcerated individuals challenging the conditions under which they are confined must now satisfy the statutory provisions governing exhaustion as outlined by the PLRA. *Id.*

Title 42, section 1997e(a) of the United States Code, as amended by the PLRA, states that, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 *U.S.C.* § 1997e(a). Section 1997e(a) in its current form is drastically different from its predecessor. The preceding statute made exhaustion discretionary. The PLRA, however, changed the statute so that exhaustion is now mandatory. *Porter*, 534 U.S. at 524. Thus, "exhaustion is now required for all action[s] brought with respect to prison conditions." *Id.*

The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Congress's purpose in enacting the mandatory exhaustion requirement was to "eliminate unwarranted federal-court interference with the administration of prisons, ...." *Woodford v. Ngo*, -- U.S. --, 126 S.Ct. 2378, 2387 (2006). Thus the exhaustion

requirement, "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525.

The remedies provided to a prisoner need not meet federal standards nor be speedy and effective. *Id.* at 524. But a prisoner must utilize all steps of the procedure. *Id.* Even when a prisoner seeks relief not available in grievance proceedings, such as money damages, exhaustion is still a prerequisite to suit. *Id.*

The record reveals that on July 17, 2004 – less than one month before he filed his Complaint – Gillis filed a grievance alleging that the medications he was receiving were causing him mental confusion and mood swings. (A-135-142). Gillis then proceeded to utilize the steps of the grievance process but this was not done until after he had already filed his lawsuit. (*Id.*). As a result, Gillis did not file the grievance in sufficient time to allow the State Defendants or the DOC the "time and opportunity to address" Gillis' complaints internally before he initiated his federal lawsuit. Therefore Gillis failed to adequately exhaust the administrative remedies available to him prior to filing his Complaint and summary judgment is proper under the terms of the PLRA.

**VI.    This Court Should Grant Judgment In Favor Of The State Defendants As To All of Plaintiff's Federal Constitutional Claims Because The Facts Of This Case Fail To Support His Bald Allegations Of Failure To Train, Violation Of Due Process And Deliberate Indifference.**

  **A.    Gillis cannot support a failure to train claim where he has failed to specify a training or policy that posed an unreasonable risk of harm to him and where he has failed to identify an alternative policy that could have prevented the harm that allegedly occurred.**

In his Complaint Gillis asks the Court to issue an injunction ordering the State Defendants to "properly train their employees in dealing with people …." (A-15 at ¶ B1). It

appears then that Gillis is alleging a failure to train claim. Given, however, that Gillis has failed to specify a policy that the State Defendants failed to employ his claim should fail.

The Plaintiff's burden in asserting a failure to train claim is articulated by the Third Circuit in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). In *Sample*, the Court held that for liability to attach to a government policymaker, a plaintiff must identify specific training or policies which defendants failed to employ that could reasonably be expected to prevent the harm that allegedly occurred. Further, a plaintiff must demonstrate that: 1) the existing custom and practice without the [plaintiff-identified] specific alternative practice created an unreasonable risk of harm; 2) the policymaker was aware of the unreasonable risk; 3) the policymaker was indifferent to the unreasonable risk, and 4) constitutionally significant harm resulted from the deficient policy or practice. *Sample*, 885 F.2d at 1118 (*citing City of Canton v. Harris*, 489 U.S. 378 (1989)).

Plaintiff's Complaint fails to allege a specific policy or training that caused him an unreasonable risk of harm. Moreover, the Plaintiff has not identified, in either the Complaint or discovery, "[other] specific training not provided that could reasonably be expected to prevent the [harm] that occurred." *Woloszyn v. County of Lawrence,* 396 F.3d 314, 325 (3d Cir. 2005). Therefore the Plaintiff has not satisfied the first factor of the Third Circuit test.

Moreover, the test outlined in *Sample* and *Woloszyn*, upon which the Plaintiff must make a prima facie case, involves penalogical issues beyond the scope of the lay juror. Lay jurors are not equipped to determine what specific training or policy is adequate for determining whether an individual needs psychotropic medications; how existing policies or practices were allegedly deficient; or the risk reduction associated with one type of training versus another. *Woloszyn*, 396 F.3d at 325. All of these questions require an expert opinion as to the propriety of existing

or alternative training or policies, and the obviousness of the risk of any given policy or practice to the policymakers. *See* FED. R. EVID. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999). Plaintiff did not identify any expert witnesses on his behalf. Therefore he cannot address any of the issues required to establish liability for a failure to train claim, either on summary judgment or at trial.[2]

Notably, in *Woloszyn*, the plaintiff did produce an expert's report and affidavit in the record, but the Court granted summary judgment nonetheless, finding the expert's submission to be deficient, as his findings were broad and conclusory and did not identify the specific type of training which allegedly should have been provided. *See also Freedman v. City of Allentown*, 853 F.2d 1111, 1117 (3d Cir. 1988) (mere conclusory allegations of failure to train are insufficient to maintain a constitutional claim). Certainly, the Third Circuit would also find that where, as here, the Plaintiff has failed to offer <u>any</u> expert opinion as to deficiencies in training or policies, or any evidence suggesting a specific type of training or policy which was allegedly absent, the Plaintiff cannot meet his burden of proving deliberate indifference for failure to train.

In addition to being unable to satisfy the legal test, Plaintiff's case also suffers the fatal defect of producing no factual evidence linking State Defendants to any training or policies that did exist. There is certainly no evidence that the State Defendants were on notice of other training which would have avoided the alleged harm to Gillis, nor any evidence remotely suggesting that, in implementing policies or procedures, State Defendants exhibited a "deliberate

---

[2]   The deadline for completing discovery, according to the Scheduling Order, was August 1, 2008. (D.I. 145). Plaintiff never named an expert nor provided any expert discovery as required by F.R.C.P 26(a)(2)(B). Plaintiff's failure to provide required discovery bars his use of such information at trial or in a motion. F.R.C.P. 37(c)(1).

indifference" to whether Gillis was in danger from the medications he was receiving. *Woloszyn*, 396 F.3d at 325.

Finally, to establish a supervisory liability claim for deficient policies or training, a plaintiff must show that the defendant officials failed to respond "in the face of an awareness of a pattern of such injuries." *Beers Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample*, 885 F.2d at 1118). There is no evidence in this case that the State Defendants were aware of a pattern of prescribing inmates improper psychotropic medication which might have put them on notice of a potential problem with training or practices.

Given the record of this case, Plaintiff's failure to establish the necessary elements for a failure to train claim, and Plaintiff's failure to offer any expert testimony that would establish such elements, the Court should grant summary judgment to the State Defendants as to any alleged failure to train claim.

**B.    State Defendants did not violate Plaintiff's due process rights by forcibly medicating him where there is no evidence to show that the State Defendants had any involvement in administering medication to Gillis and where the record shows that forced medication is in Gillis' best interests.**

In his Complaint Gillis asserts that the State Defendants should be held liable for violating his due process rights because they administered medication to him that was not needed. There is no evidence to support Gillis' claim, however, and judgment should be granted in favor of the State Defendants.

The State Defendants have never administered medication to Gillis. (A-176-184). In fact Gillis never alleges in his Complaint that the State Defendants administered medication to him. Rather he states that it was the medical and mental health staff that gave him his medications. (A-16 at ¶ D). Thus Gillis has no evidence to support the claim that the State Defendants administered medication to him in violation of his constitutional rights.

Moreover, Gillis' claim should fail because the administration of his medication was proper and in accordance with court orders. "The Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Washington v. Harper,* 494 U.S. 210, 227 (1990). Thus forcing medication on an inmate is permissible if the State can show a finding of "overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992).

Plaintiff has been diagnosed with schizophrenia. As treatment for schizophrenia Plaintiff has been prescribed various psychotropic medications. Plaintiff has often refused his medication. (A-109-111, 114, 122, 124, 143-157). During the times where Plaintiff has refused to take his medications he has attempted to commit suicide and/or been violent towards inmates and staff. (A-115, 117-118, 125, 134). Therefore if Plaintiff is not given his medications he is a harm to himself and to others.

As a result of his violent tendencies when he refuses to take his medication, the Superior Court of Delaware has issued two orders stating that Gillis "be required to take any and all medications and/or other treatment as directed …." (A-112-113, 133). In light of Gillis's harm to himself and others when off of his medication and in light of the Superior Court's orders, the State has an overriding justification in forcibly medicating Gillis. Therefore the administration of medication, though unwanted, did not violate Gillis' rights because it was necessary to control a dangerous and violent inmate and summary judgment is proper.

C.    **Gillis cannot maintain a deliberate indifference claim where the record shows that he has been provided access to medical care and treatment and simply disagrees with the treatment he has received.**

Gillis also alleges in his Complaint that the State Defendants have been deliberately indifferent to his medical needs.  Because the State Defendants have given Gillis access to medical care and treatment throughout his incarceration there is no evidence to support a claim of deliberate indifference and summary judgment is proper.

Prison systems must provide prisoners with adequate medical care.  *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).  "In order to succeed in an action claiming inadequate medical treatment, a prisoner must show more than negligence; he must show 'deliberate indifference' to a serious medical need."  *Id.*

To demonstrate a cognizable claim of deliberate indifference under the Eighth Amendment a prisoner must prove that, (1) the defendant was deliberately indifferent to his medical needs; and (2) his medical needs were serious.  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Further, "[a] medical decision … does not represent cruel and unusual punishment.  At most it is medical malpractice, …."  *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

There are several reasons why Gillis cannot establish a deliberate indifference claim.  First, the record reflects that Gillis has received medical care and treatment throughout his incarceration.  (A-109-172).  When necessary he has also been transferred to DPC for evaluation and treatment.  (A-159-172).  Gillis never alleges in his Complaint or through discovery that he was denied treatment or medication.  Thus there is no evidence to show that Gillis was denied access to care.

Second, Gillis has failed to establish that the State Defendants had the requisite intent to cause him harm.  The record reflects that State Defendants Taylor, Howard, Carroll and Burris

do not know Gillis and had no involvement in his medical care and treatment for schizophrenia. (A-176-184). Therefore there is no way for Gillis to prove that these State Defendants subjectively intended to cause him harm. Although State Defendant Simms admits that he met Gillis in 2000 by that time Gillis had already been diagnosed with schizophrenia and was court ordered to take his medications. (A-183-184). Therefore Gillis cannot establish that Simms had the requisite intent for a deliberate indifference claim.

Third, Gillis cannot establish a claim for deliberate indifference solely on the basis that he does not believe the decision to medicate him was proper. A prison official may be held liable under the Eighth Amendment by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05. But where, as here, the inmate was provided access to medical care and simply disagrees with the type of care he received, no Eighth Amendment violation against the prison officials can be found. *See, id.* Therefore Gillis cannot support his claim of deliberate indifference and summary judgment is appropriate.

Finally, Gillis has failed to set forth any evidence in his Complaint or through discovery that the medication he was taking – Haldol, Geodon, Inderal and Cogentine – caused his schizophrenia or caused him to commit crimes while incarcerated. Gillis has failed to name an expert witness who can establish such a claim and he has not offered any other evidence to indicate that these psychotropic medications caused the problems he is claiming.

The record fails to support Gillis' claim that the State Defendants were deliberately indifferent to his medical needs. Therefore the Court should grant judgment in favor of the State Defendants on this claim.

**VII.    Summary Judgment Is Appropriate As To Plaintiff's State Tort Claims Because The State Defendants Are Immune From Liability Under The State Tort Claims Act And Because There Is No Evidence To Support Plaintiff's Claims Of Assault And Battery, Retaliation Or Civil Conspiracy.**

Gillis alleges that the State Defendants committed several torts against him in violation of state law. The State Defendants, however, are immune from such claims under the State Tort Claims Act. Moreover, the facts of the case fail to support Gillis' allegations. Therefore the Court should grant judgment in favor of the State Defendants on Gillis' state tort claims.

**A.    State Defendants are immune from liability for Gillis' state claims under the State Tort Claims Act.**

The State Tort Claims Act immunizes state defendants from liability for actions that (1) "arose out of and in connection with the performance of an official duty ... involving the exercise of discretion;" (2) "[were] done in good faith and in the belief that the public interest would best be served thereby;" and (3) "[were] done without gross or wanton negligence." 10 *Del. C.* § 4001. In an action against a state defendant, the plaintiff "shall have the burden of proving the absence of 1 or more of the elements of immunity…." *Id.*

In this case the State Defendants have satisfied the requirements for immunity. The record reflects that the State Defendants have not participated in the diagnosis of Gillis with schizophrenia or the administration of medication to him. (A-176-184). Moreover, when it was deemed necessary, Gillis was admitted to DPC for treatment and an order was sought from the Delaware state courts to forcibly medicate him. (A-173-175). There is no evidence to show that the State Defendants performed their jobs with gross or wanton negligence. Rather the evidence presented shows that the State Defendants performed their jobs in good faith and with a belief that the public was best served by forcibly medicating Gillis. Given the facts of this case Gillis

cannot prove the absence of one of the elements of immunity and the State Defendants are entitled to protection from liability for Gillis' state tort claims.

### B. There is no evidence in the record to support Gillis' allegations of violation of his state rights.

1. *There is no basis for an assault and battery claim where the record shows that the State Defendants did not administer medications to Gillis.*

Gillis asserts in his Complaint that the State Defendants should be held liable for the torts of assault and battery. Under Delaware law, "[T]he tort of battery is the intentional, unpermitted contact upon the person of another which is harmful or offensive." *Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995).

The record reflects that the State Defendants never personally administered medication to Gillis or directed someone else to administer medication to him. (A-176-184). In fact the State Defendants had no involvement in the diagnosis of Gillis, the decision to treat him with psychotropic medications or the administration of medications to him. (*Id.*). Gillis admits as much in his Complaint when he states that the medical and mental health staffs administered his medications to him. (A-16 at ¶ D).

Given that the State Defendants have never administered Gillis' psychotropic medications to him, he cannot prove that the State Defendants made contact with him or touched him in a harmful or offensive manner. Therefore summary judgment is appropriate as to this claim.

2. *Gillis cannot prove a retaliation claim where the record shows that he was receiving medication because he was schizophrenic and violent toward himself and others when he refused to take his medications.*

Gillis claims that the State Defendants committed the tort of retaliation against him. To establish a claim for retaliation Gillis must show, "(1) constitutionally protected conduct, (2) an

adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

There is no evidence in the record to support a claim of retaliation. Gillis was prescribed psychotropic medications as a result of his mental condition – not because he was exercising a constitutional right. Moreover, nothing in the record demonstrates that the State Defendants had any involvement in diagnosing Gillis or in administering medications to him. Therefore Gillis cannot establish the elements of a claim of retaliation and judgment should be granted on this claim in favor of the State Defendants.

> 3.  *State Defendants cannot be held liable for civil conspiracy where the record shows that they had no involvement in Gillis' diagnosis or treatment of schizophrenia.*

Plaintiff alleges that the State Defendants have conspired to injure him by administering psychotropic mediations to him against his will and committing other torts and civil rights violations. To prove a claim of civil conspiracy the Plaintiff must show, (1) a confederation or combination of two or more persons; (2) some unlawful act done in furtherance of the conspiracy; and (3) actual damage. *McLaughlin v. Copeland*, 455 F.Supp. 749, 752 (D. Del. 1978); *See also*, *AeroGlobal Capital Management, LLC v. Cirrus Industries, Inc.*, 871 A.2d 428, 437 n.8 (Del. 2005). "The gravaman of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which would be actionable absent the conspiracy." *McLaughlin*, 455 F.Supp. at 752.

As previously demonstrated the State Defendants had no involvement in diagnosing Gillis with schizophrenia or prescribing him psychotropic medications. (A-176-184). Therefore Gillis cannot establish the existence of a confederation.

Moreover Gillis cannot show that prescribing him psychotropic medications was unlawful where, as here, the decision to medicate was supported by Gillis' violent actions and the orders of the Delaware Superior Court. Therefore Gillis cannot prove that an unlawful act was committed in furtherance of a conspiracy.

Given that Gillis cannot establish the elements for a claim of civil conspiracy the Court should grant judgment in favor of the State Defendants on this claim.

**VIII.  State Defendants Are Immune From Liability For All Claims Against Them In Their Individual Capacities Pursuant To The Doctrine Of Qualified Immunity Because There Is No Evidence That They Violated Gillis' Clearly Established Constitutional Rights.**

The State Defendants are protected from liability for Gillis' claims in their individual capacities by the doctrine of qualified immunity. The doctrine of qualified immunity holds that government officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Furthermore, state officials are entitled to qualified immunity where they acted in good faith, without gross or wanton negligence, in the performance of discretionary duties. *Vick v. Haller*, 512 A.2d 249 (1986) (*aff'd in part and rev'd in part on procedural grounds*).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Thus a determination by the district court of whether qualified immunity applies should be made at the earliest possible stage "so that the costs and expenses of trial are avoided where the defense is dispositive." *Id.* at 200-01.

In deciding a question of qualified immunity a district court is required to consider an initial inquiry: "Taken in the light most favorable to the party asserting the injury do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. "If and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established … in light of the specific context of the case.'" *Scott*, -- U.S. --, 127 S.Ct. at 1774. In other words, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Creighton*, 483 U.S. at 640.

In this case, Gillis cannot establish that the State Defendants violated a clearly established constitutional right. The State Defendants had no involvement in the decision to diagnose Gillis will schizophrenia or the decision to treat him with psychotropic medications. (A-176-184). Gillis cannot prove then that the State Defendants' conduct violated his rights.

In fact, the evidence presented shows that the State Defendants performed their jobs in good faith without gross or wanton negligence. The State Defendants played no role in diagnosing Gillis or prescribing him psychotropic medications. (*Id.*). Moreover the State Defendants did not interfere in Gillis' medical treatment and had him transferred to DPC when the medical provider and the court determined it necessary for his well being. Therefore it is clear that the State Defendants did not violate Gillis' rights and are entitled to qualified immunity as to all claims against them in their individual capacities.

**IX.    There Is No Basis For An Adverse Inference Instruction Where The State Defendants Did Not Intentionally Destroy The Medical Records And The Plaintiff Cannot Show He Has Suffered Prejudice By The Failure To Produce The Records.**

In *Schmid v. Milwaukee Electric Tool Corp*, 13 F.3d 76 (3d Cir. 1994), the Third Circuit held that the first factor to consider in determining whether to apply an adverse inference instruction is the degree of fault of the party who destroyed the evidence. *Schmid*, 13 F.3d at 79. "No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). This Court has further held that a court "must consider whether the party intended to impair the ability of the other side to effectively litigate this case." *Positran Mfg., Inc. v. Diebold, Inc.*, 2003 WL 211044954, at *2 (D. Del. May 15, 2003). It is a party who has reason to anticipate litigation that has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit. *In re Wechsler*, 121 F.Supp.2d 404, 415 (D. Del. 2000).

There is no evidence to show that the State Defendants intentionally destroyed Gillis' medical records. In fact, the Plaintiff admits that there is no such evidence. Moreover, despite the existence of the retention policy, Gillis cannot establish that the policy created within the State Defendants a duty to preserve the records – especially where Gillis had not filed a lawsuit related to his medical claims. Therefore the first factor has not been met.

In addition, the Plaintiff cannot establish the existence of the second factor of the adverse inference instruction test – the degree of prejudice suffered. *Schmid*, 13 F.3d at 79. Plaintiff has failed to show that the missing records are relevant to his claims. To the extent these records existed the only thing they would show was that the plaintiff was receiving medical treatment. The records would not prove that Gillis committed crimes because of the medication he was taking. Therefore an adverse instruction is not proper.

## **CONCLUSION**

The record in this case reflects that summary judgment should be granted in favor of the State Defendants as to all claims filed against them.   Plaintiff is procedurally barred from bringing his claims.   First, Gillis failed to file the lawsuit within the two year statute of limitations period.   Second, this claim is not properly before this Court as the Court lacks the necessary subject matter jurisdiction under the *Rooker-Feldman* doctrine.   Third, the State Defendants cannot be held liable in their official capacity for Gillis' claims.   Finally, Gillis failed to exhaust the administrative remedies available to him prior to filing his lawsuit.

In addition, the evidence fails to show that there is a genuine issue of material fact for trial.   Gillis cannot establish that the State Defendants were personally involved in the alleged deprivation of his rights or that they were deliberately indifferent to his needs.   Moreover, the evidence reveals that the State Defendants had no involvement in the diagnosis of Gillis with schizophrenia, in the decision to treat him with psychotropic medications or in the administration of medications to him.   Therefore Gillis cannot support any of his federal constitutional or state law claims and judgment should be granted in favor of the State Defendants and against the Plaintiff on all claims.

# <u>CERTIFICATE OF SERVICE</u>

I, Erika Y. Tross, Esq., hereby certify that on September 2, 2008, I caused a true and correct copy of the attached ***State Defendants' Opening Brief in Support of Their Motion for Summary Judgment*** to be served on the following individual in the form and manner indicated:

**<u>VIA ELECTRONIC DELIVERY</u>**
**<u>& FIRST CLASS MAIL:</u>**

Zhun Lu, Esq.
Connolly, Bove, Lodge & Hutz, LLP
1007 North Orange Street
Post Office Box 2207
Wilmington, DE  19899

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400