# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VURNIS L. GILLIS, | ) CIVIL ACTION |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-921 (SLR) |
| | ) |
| STAN TAYLOR et al., | ) |
| | ) |
| Defendants. | ) |

---

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Zhun Lu (#4427)
CONNOLLY BOVE LODGE & HUTZ LLP,
P.O. Box 2207
Wilmington, DE   19899-2207
Telephone:        (302) 888-6207
Facsimile:        (302) 658-5614
Email:            ZLu@cblh.com
*Attorney for Plaintiff*

Dated:    September 19, 2008

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     COUNTERSTATEMENT OF FACTS ....................................................1

III.    SUMMARY OF ARGUMENT ................................................................2

IV.     ARGUMENT.........................................................................................2

      A.      Adverse Inference is Warranted Because the Defendants
              Have Demonstrated Bad Faith by Failing to Timely Admit
              That They Lost Gillis' Medical Records .........................................2

      B.      The Eleventh Amendment Does Not Offer the Defendants
              Immunity .......................................................................................4

      C.      The Court Should Not Grant Summary Judgment for the
              Defendants Concerning Gillis' Constitutional Claims ...................7

              1.     Defendants Violated Gillis' Due Process Rights by
                      Forcibly Medicating Him in Violation of its Own
                      Policies and Procedures .......................................................7

              2.     Defendants Were Deliberately Indifferent by
                      Medicating Gillis for Over Twenty Years without
                      Medical Records or Evidentiary Support...............................8

              3.     Defendants' Failure to Train is in Violation of its
                      Own Established Policies and Procedures ...........................10

      D.      The State Tort Claims Act is Inapplicable because the Torts
               Complained of Stem from Non-Discretionary Activities,
               Were Performed in Bad Faith, and Done with Gross and
               Wanton Negligence .....................................................................11

      E.      The Rooker-Feldman Doctrine is Inapplicable .............................12

      F.      Summary Judgment is Inappropriate because the
              Defendant's Liability is Predicated on Supervisory
              Liability, and the Defendant's Cannot Rely on Failure to
              Follow Retention Policies............................................................13

      G.      Insufficient Evidence Exists to Demonstrate Gillis' Failed
              to Exhaust His Administrative Remedies.....................................14

      H.      Plaintiff's Claim is Not Barred by the Statute of
              Limitations..................................................................................15

V.      CONCLUSION ...................................................................................21

## TABLE OF CITATIONS

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................6

*Brown v. Croak*,
   312 F.3d 109 (3d Cir. 2002) ........................................................................14

*Carrigan v. Delaware*,
   957 F.Supp. 1376, (D. Del. 1997) ................................................................12

*City of Canton v. Harris*,
   489 U.S. 378 (1989) .................................................................................10

*Crawford-El v. Britton*,
   523 U.S. 574 (1998) ...................................................................................5

*Curley v. Klem*,
   499 F.3d 199 (3d Cir. 2007) ........................................................................5

*Derrickson v. Keve*,
   390 F.Supp. 905 (D. Del. 1975) ...................................................................9

*Drope v. Missouri*,
   420 U.S. 162 (1975) .................................................................................19

*Estelle v. Gamble*,
   429 U.S. 97 (1976) ....................................................................................8

*Ex parte Young*,
   209 U.S. 123 (1908) ...................................................................................4

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (U.S. 2005) ..........................................................................12

*Graham v. Kyler*,
   2002 WL 32149019 (E.D. Pa. Oct. 31 2002) ...............................................16

*Green v. Phila. County Prisons*,
   2006 U.S. Dist. LEXIS 72742 (E.D. Pa. Oct. 4, 2006) ...................................14

*Hafer v. Melo*,
   502 U.S. 21 (1991) ....................................................................................5

*Hardin v. Straub,*
    490 U.S. 536 (1989) ................................................................................16

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ..................................................................................6

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ..................................................................................5

*In re: Intel Corp. Microprocessor Antitrust Litigation,*
    2007 U.S. Dist. LEXIS 97229 (D. Del. 2007)............................................2

*Inmates of Allegheny County Jail v. Pierce ,*
    612 F.2d 754 (3d Cir. 1979) ......................................................................8

*Jones v. Bock,*
    549 U.S. 199 (2007) ................................................................................14

*Kentucky v. Graham,*
    473 U.S. 159 (1985) ..................................................................................5

*Lake v. Arnold,*
    232 F.3d at 370 n. 9 ....................................................................15, 16, 17

*Milliken v. Bradley,*
    433 U.S. 267 (1977) ..................................................................................4

*Monmouth County Correctional Institutional Inmates v. Lanzaro,*
    834 F.2d 326 ..............................................................................................9

*Moody v. Kearney,*
    380 F.Supp.2d 393 (D. Del. 2005) ....................................................15, 16

*Mosel Vitelic Corp. v. Micron Technology, Inc.,*
    162 F.Supp.2d 307 (D. Del. 2000) ............................................................2

*Ray v. Kertes,*
    285 F.3d 287 (3d Cir. 2002) ....................................................................14

*Rode v. Dellarciprete,*
    845 F.2d 1195 (3d Cir. 1988) ..................................................................13

*Rouse v. Plantier,*
    182 F.3d 192 (3d Cir. 1999). .....................................................................8

*Sample v. Diecks,*
   885 F.2d 1114 (3d Cir. 1989)....................................................7, 10, 13

*Sandutch v. Muroski,*
   684 F.2d 252 (3d Cir. 1982). .........................................................20

*Saucier v. Katz,*
   533 U.S. 194 (2001) ....................................................................5

*Schmid v. Milwaukee Elec. Tool Corp.,*
   13 F.3d 76 (3d Cir. 1994) .............................................................4

*Washington v. Harper,*
   494 U.S. 210 (1990)...........................................................5, 6, 7, 10

*West v. Philadelphia Elec. Co.,*
   45 F.3d 744 (3d Cir. 1995) ...........................................................20

*Will v. Michigan Dept. of State Police,*
   491 U.S. at 23.........................................................................4, 5

**Statutes**

10 Del. C. § 4001.............................................................................11

11 Del. C. § 4322.............................................................................17

42 U.S.C. § 1983.........................................................................4, 15, 17

**Rules**

Fed. R. Civ. P. 37.............................................................................2

I.    **Introduction**

Plaintiff Vurnis Gillis ("Gillis") submits this brief in opposition of Stan Taylor, et al's ("Defendants") Motion for Summary Judgment (D.I. 151). For the reasons set forth below, Defendants' Motion for Summary Judgment should be denied.

II.    **Counterstatement of Facts**

Plaintiff generally agrees with the recitation of events in the "Statement of The Facts" section of Defendants' Opening Brief In Support of Their Motion For Summary Judgment (D.I. 152) with one major exception: Defendants' Statement of Facts, and to a lesser degree their Nature and Stage of Proceedings ignore the central issue in this case– the total failure of the Defendants to maintain Plaintiff's medical records. Those records are crucial to BOTH parties' positions in this case but are no longer accounted for due to Defendants' negligence and disregard of their own document retention policy and standard of care. In addition, Defendants' statement that they first produced the medical records on August 15, 2006 is not true.

Defendants produced the first set of medical records on May 9, 2006. On June 15, 2006, plaintiff's counsel sent Defendants a letter to point out the records from 1986 to mid-1990s are missing (Exh. A). Defendants were on notice of the missing records from very early on. But, Defendants repeatedly produced mostly duplicative records (on August 15, 2006; August 18, 2006; and July 5, 2007). Throughout discovery and several teleconference hearings with the court on that very issue, Defendants would not admit those records are missing. At the last court hearing on August 23, 2008, defendants finally admitted the records are missing (D.I. 148 p. 10, ln. 21-22).

### III.     Summary of Argument

The fact that Gillis' medical records are missing is undisputed.  These missing

medical records are critical to all the arguments made in defendants' Summary Judgment

Motion.  The State's failure to follow its own record keeping policy and standard of care

for inmates is the sole reason for the medical records' disappearance.  No fault rests with

Gillis.  The State defendants should face the consequences of their failures and

negligence.  Therefore, plaintiff respectfully requests that the Defendants' Motion for

Summary Judgment be denied.

### IV.     Argument

#### A.  *Adverse Inference is Warranted Because the Defendants Have Demonstrated Bad Faith by Failing to Timely Admit That They Lost Gillis' Medical Records*

This court, whether exercising its inherent power or acting pursuant to Rule 37,

has wide discretion in sanctioning a party for spoliation of evidence and for discovery

abuses. *Paul v. Intel Corp.* (*In re Intel Corp. Microprocessor Antitrust Litig.*), 2007 U.S.

Dist. LEXIS 97229, *7 (D. Del. Dec. 13, 2007); Fed. R. Civ. P. 37.  Sanctions for

spoliation may be imposed where the duty to preserve relevant evidence has been

triggered. See *Mosel Vitelic Corp. v. Micron Technology, Inc.,* 162 F.Supp.2d 307, 310-

11 (D. Del. 2000).  In this case Defendants had a duty to maintain and preserve all of

Gillis' medical records.  This duty is set out in state's 60-year record retention policy.

(D.I. 150 Exh. A, p. 16, ln. 20-21). Though Defendants assert that "Gillis ha[s] not filed a

lawsuit related to his medical claims," that is not so. (D.I. 152, p. 39).  The missing

records are manifestly relevant to Gillis' central claim– whether he has been

unconstitutionally medicated with psychotropic drugs beginning in 1987.  Thus

2

Defendants had a duty to retain Gillis' relevant medical records from the time he was first incarcerated in 1986 and they have failed to do so. Nor have they accounted for their absence whatsoever.

Contrary to Defendants' assertions, suspicious circumstances exist that infer Defendants' culpability and justify an adverse inference. Along with the missing records from 1986-1996, the medical evaluation relied on by the state court on March 31, 1999 when ordering continued forced psychotropic drugs is missing too. (D.I. 152, A-112-113).

In their brief, Defendants further misstate the factual history of discovery in this case. Rather than producing the medical records on Aug. 15, 2006, Defendants sent Plaintiff's counsel the first set of medical records on May 9, 2006. (Exh. A). On June 15, 2006, Plaintiff counsel sent Defendants a letter pointing out that the records from 1986 to the mid-1990s were missing. (*Id.*). Thus, Defendants were on notice very early on of the missing records, but no admission of their absence was forthcoming thought out the discovery.

As a result, Plaintiff's counsel had to employ numerous litigation maneuvers attempting to locate something that does not exist anymore, including holding numerous *inter partes* teleconferences, taking fruitless depositions, making numerous requests, and searching for the records on site. In response to the inquiries, Defendants were evasive and repeatedly produced mostly duplicative records without informing plaintiff's counsel that those records were missing – a fact defendants knew or should have known upon plaintiff's notice. It wasn't until recently that at the last hearing on August 26, 2008 Defendants admitted in court that "there are no documents to be found." (D.I. 148, p. 10,

ln. 21-22). Defendants have a duty to investigate upon plaintiff's notice of the missing

records. But it took about two years for defendants to admit this fact. Defendants are not

as upfront as they claim to be and the circumstances warrant an inference of bad faith and

abuse of discovery.

An adverse inference instruction is therefore warranted. The "degree of

prejudice" Gillis suffers due to the documents' absence is great because all issues hinge

on whether Gillis was constitutionally force medicated psychotropic drugs. *Schmid v.*

*Milwaukee Elec. Tool Corp.,* 13 F.3d 76 (3d Cir. 1994). Second, without the granting of

an adverse inference, Defendants will effectively benefit from their bad faith, or at the

very least, grossly negligent actions and cavalier attitude. *Id.* And finally, imposing

sanctions would not impose any new burdens on Defendants; they are already under a

duty to retain the crucial records at issue here. *Id.*

### B.  *The Eleventh Amendment Does Not Offer the Defendants Immunity*

The Eleventh Amendment does not preclude suits against state officers in their

official capacities to enjoin violations of federal law. See *Ex parte Young,* 209 U.S. 123,

159-60 (1908); *see also*, *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 n.10

(1989).[1] Injunctive relief against a state officer that may cost the state money in the

future is also not prohibited by the Eleventh Amendment. *See, e.g.*, *Milliken v. Bradley,*

433 U.S. 267 (1977). In this case, by not following their duty of policing prison medical

providers' compliance with State policy, standard of care, and constitutional rights;

---

[1] "[A] state official in his or her official capacity, when sued for injunctive relief, would
be a person under § 1983. . . . *Id.* (internal citation omitted).

Defendants are not protected by immunity– they stepped outside their protected official duty by their inaction and supportive role in Gillis' unconstitutionally forced medication.

The Eleventh Amendment also does not prevent suits against officers for money damages to be paid out of the officers' own pockets, even when the damages are retrospective compensation for past harms. *See, e.g.*, *Kentucky v. Graham,* 473 U.S. 159 (1985); *see also, Will,* 491 U.S. at 23.[2]  This is true even though the conduct was part of the officer's official duties. See *Hafer v. Melo,* 502 U.S. 21, 26 (1991).  The test for qualified immunity is whether, taken in light most favorable to the party alleging injury, (1) the facts show the defendants' conduct violated a constitutional right, and (2) the constitutional right was clearly established, based on the specific context of the case. *Hope v. Pelzer*, 536 U.S. 730 (2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

Though Gillis at this stage is not required to present facts in any greater specificity than that required by summary judgment rules, s*ee Crawford-El v. Britton,* 523 U.S. 574, 594 (1998), Gillis nonetheless has plainly suffered a violation of a clearly established constitutional right– the forced administration of antipsychotic drugs without due process. *Washington v. Harper,* 494 U.S. 210, 233 (1990).  Defendants have failed to make any showing Gillis' forced medication beginning in 1987 was proper.

"[D]etermining what actually happened is a prerequisite to determining whether the law clearly established that a particular action was permitted or prohibited . . . under [the] circumstances." *Curley v. Klem,* 499 F.3d 199, 225 (3d Cir. 2007).  At this stage, however, the court is not to make factual determinations, rather the court must view the facts in the light most favorable to Gillis, the non-moving party. *Anderson v. Liberty*

---

[2] Holding that state officials sued in their individual capacities are "persons" for § 1983.

5

*Lobby, Inc.,* 477 U.S. 242 (1986). Thus, in making the determination of the applicability of qualified immunity in this case, the question of whether a reasonable official could have believed that her particular actions violated a clearly established right embodies some factual component– one that, at this stage, the court must view in the light most favorable to Gillis. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

It's self-evident that the administration of powerful and dangerous psychotropic drugs must be undertaken with either consent of the patient or, in the case of an unwilling inmate, upon official order after following proper procedures and guidelines. *See Washington v. Harper,* 494 U.S. 210, 233 (1990) ("[I]nvoluntary medication with antipsychotic drugs [] cannot withstand challenge if there are no procedural safeguards to ensure the prisoner's interests are taken into account.").

In this case, consent is absent, so if the forced administration of psychotropic drugs starting in 1987 can be justified by Defendants, proper documentation of such forced medication must be shown. That documentation is lacking. Defendants admittedly controlled such documents, if they ever existed, and it was their responsibility to retain those records until 60 years after Gillis' release or 60 years after his death in prison. (D.I. 150, Exh. A, p. 16, ln. 2-21). Neither contingency has occurred. Since Defendants cannot proffer the vital documents substantiating their position, a genuine issue of material fact therefore remains because the forced administration of psychotropic drugs against a prisoner's will without proper authorization is unconstitutional. Summary judgment in Defendants' favor is not appropriate because Defendants would benefit from their failure to follow established policy and standard of care. Defendants' motion should be denied.

**C.** *The Court Should Not Grant Summary Judgment for the Defendants Concerning Gillis' Constitutional Claims*

**1.    Defendants Violated Gillis' Due Process Rights by Forcibly Medicating Him in Violation of its Own Policies and Procedures**

Under the Fourteenth Amendment, a state may not authorize the deprivation of a protected liberty interest without providing a procedure in connection with that deprivation that meets the requirements of due process. *Sample v. Diecks,* 885 F.2d 1114 (3d Cir. 1989). When an official authorizes constitutionally inadequate procedures, the official's liability is not negated by a showing that he or she did not intend to deprive the plaintiff of due process of law. *Id.* Any state-of-mind requirement of the due process clause is satisfied if the official authorizes a system with the intention that it will operate to deprive persons of life or liberty, whether or not he intends the deprivation to be without due process of law. *Id.*

Specifically, one "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper,* 494 U.S. 210, 221-22 (1990). "The forcible injection of medication into a non-consenting person's body represents a substantial interference with that person's liberty." *Id.* at 229. The seriousness of these drugs was recognized by the Supreme Court in *Washington v. Harper,*

> The purpose of [psychotropic] drugs is to alter the chemical balance in a patient's brain, leading to changes, intended to be beneficial, in his or her cognitive processes. While the therapeutic benefits of antipsychotic drugs are well documented, it is also true that the drugs can have serious, even fatal, side effects. One such side effect [] is acute dystonia, a severe involuntary spasm of the upper body, tongue, throat, or eyes. . . . Other side effects include akathesia (motor restlessness, often characterized by an inability to sit still); neuroleptic malignant syndrome (a relatively rare condition which can lead to death from cardiac dysfunction); and tardive dyskinesia, perhaps the most discussed side effect of antipsychotic drugs. Tardive dyskinesia is a neurological disorder, irreversible in some cases,

that is characterized by involuntary, uncontrollable movements of various muscles, especially around the face.

*Id.* at 229-30 (internal citations omitted).

Delaware prison policies "allow an inmate to refuse, in writing, medical treatment and care." (D.I. 150, Exh. D, P-69). Exception, however, "may arise in psychiatric emergencies" where forced psychotropic medication could be resorted to. (*Id.* at P-70). In such a case, Delaware's Standards for Health Services in Prisons require that "[a]ll less restrictive or intrusive measures have been employed or have been judged by the treating physician or psychiatrist to be inadequate." (*Id.*) And the "physician or psychiatrist *clearly documents in the medical record* the inmate's condition, the threat posed, and the reason for the proposed forcing of medication, including other treatments attempted." (*Id.*) (emphasis added). Defendants have proffered no evidence that due process was met in Gillis' case. Defendants relied on certain medical records to support their position that Gillis was properly medicated (D.I. 153, A-115, 117, 119). But these records are dated in 2000 or 2001, many years after the continuous improper medication started at least as early as January 1996. (Exh. B. D00322).

### 2. Defendants Were Deliberately Indifferent by Medicating Gillis for Over Twenty Years without Medical Records or Evidentiary Support

The State of Delaware has an obligation to provide "adequate medical care" to individuals incarcerated in its prisons. *See Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979). A cognizable claim alleges (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999).

8

The serious medical need requirement is satisfied where denial or delay of medical care causes an inmate a life-long handicap or permanent loss. *See Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal citation omitted); *see also, Derrickson v. Keve,* 390 F.Supp. 905, 907 (D. Del. 1975). In this case, Defendants denied Gillis proper medical care by forcibly medicating him against his will with powerful and dangerous psychotropic drugs causing him severe, life-altering, and potentially fatal side effects. Without Gillis' medical records showing that Gillis was in fact *properly* medicated, it is Defendants, rather than Gillis, that require evidentiary support at this stage.

Further, forcing a man to take psychotropic drugs against his will for over two decades resulting in substantial physiological damage cannot be characterized as mere "negligence" or "medical malpractice" as Defendants suggest. (D.I. 152, p. 32). Defendants put forward that since the available documents reflect "that Gillis has received medical care and treatment throughout his incarceration. . . . [and] [w]hen necessary he has [] been transferred to DPC for evaluation and treatment," proper treatment is evidenced. (*Id.*). On the contrary, the records substantiate the psychotropic medications started at least as early as January 1996 and onward for years. (Exh. B. D00269-00322, D01163-01233). But there is no proof in the medical records to show the intial diagnosis for the reasons of such medication. Even the medical evaluation that was the basis for the State court's March 31, 1999 order is missing from the medical records.

Plaintiff's intake records including mental health assessment required by State's standard of care, are missing. Defendants have not provided any explanation for the 10 years of missing medical records. Defendants and medical provided failed to account for

or document the hand over of medical records from one provider to another to ensure the continuity of care as required by the policy and standard of care.

### 3.    Defendants' Failure to Train is in Violation of its Own Established Policies and Procedures

"[S]upervision entails, among other things, training . . . [and] monitoring adherence to performance standards." *Sample,* 885 F.2d at 1116.  Supervisory liability "may be imposed where the risk of constitutional violations is so great and obvious that deliberate indifference can be inferred from that risk and the [supervisor's] failure to address it through appropriate training." *Id.* at 1117 (citing *City of Canton v. Harris,* 489 U.S. 378 (1989)).

Here, Gillis' improper forced medication resulted from Defendants' failure to employ constitutionally adequate supervisory practice.  Specifically, Defendants failed to adequately train and monitor its prison medical service providers regarding (1) the established procedures for forced medication of prisoners that was promulgated by the National Commission on Correctional Health Care ("NCCHC"), and (2) following established record retention policies– policies that mandate prisoner records be kept for 60 years following an inmate's death or release. (D.I. 150, Exhs. C and D).  Where inmates may be force-medicated with psychotropic drugs, due process requires adequate procedures be followed to protect the prisoner's interests. *Washington v. Harper,* 494 U.S. 210 (1990).  Such serious action therefore entails the risk of constitutional violations "so great and obvious that deliberate indifference can be inferred," satisfying the above standard. *Sample,* 885 F.2d at 1117.

Regarding Defendants' assertion that since Gillis has not identified an expert to assist a trier of fact, such identification would be premature at this stage. (D.I. 152, p. 28-

10

29). An expert may be identified and supplied post-summary judgment stage. Also, without the complete medical records, even an expert may not be able to opine accurately; a highly prejudicial consequence of the State's violation of its policies and standards.

> **D.** ***The State Tort Claims Act is Inapplicable because the Torts Complained of Stem from Non-Discretionary Activities, Were Performed in Bad Faith, and Done with Gross and Wanton Negligence***

The State Tort Claims Act ("STCA") immunizes the State and state actors from suit when: (1) the act or omission complained of involved an exercise of discretion; (2) the act or omission was done in good faith and in the belief that the public interest is best served; *and* (3) The act or omission complained of was done without gross or wanton negligence. 10 *Del. C.* § 4001.

The maintenance of medical records is mandatory; it does not involve the exercise of discretion. The record establishes that the State has adopted NCCHC standards for health services in prison since 1986 and is required to follow those procedures. (D.I. 150, Exhs. C and D). Failure to maintain Gillis' records could not have been done in good faith or in the belief that the public interest is being best served. Medical records covering about ten years are missing. The public interest would be served by properly medicating Gillis. Instead Defendants have continued to force-medicate him without a complete medical history or any possibility of maintaining continuity of care. The failure to maintain these records is grossly and wantonly negligent, precluding application of STCA immunity.

Defendants' loss of Gillis' medical records is an extreme departure from the ordinary duty of care because they cannot establish why or when he was medicated. Not

11

only is it a departure from the ordinary duty of care, it is inapposite to the State's own

policy and standard of care.  Such an extreme departure can only be described as

evidencing an "I-don't-care attitude." *Carrigan v. Delaware,* 957 F.Supp. 1376 (D. Del.

1997).  Thus, the elements of the STCA have not been fulfilled and Defendants are not

shielded from Gillis' state law claims.

### E. *The Rooker-Feldman Doctrine is Inapplicable*

As Defendants noted, Federal Courts may not review claims that are inextricably

intertwined with a state court decision.  Defendants, however, overstate the proposition

for which *Rooker-Feldman* stands.  The *Rooker-Feldmen* doctrine merely prevents "cases

brought by state-court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and inviting district court

*review and rejection* of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus.

Corp.*, 544 U.S. 280, 284 (U.S. 2005) (emphasis added) ("[T]he Third Circuit

misperceived the narrow ground occupied by *Rooker-Feldman.* . . .").

Gillis does not seek to have the Court review or reject the judgments of Delaware

courts.  Defendants focus on Gillis' diagnosis and treatments in or after 1999.  But the

key issue is the forced administration of psychotropic drugs starting in 1987, not 1999.

Thus, unconstitutional acts occurred well before the state court orders requiring Gillis'

continued medication.  The side effects of such medication cause uncontrollable and

uncharacteristic behavior.  Therefore, the need to continue Gillis' forced medication

recognized in the March 31, 1999 state court order arose due to side effects of

Defendants' unconstitutionally forced continuous psychotropic medication starting in

1987.  Defendants assert, with no evidentiary support, that "[t]o the extent Gillis contends

that his initial receipt of medications is at issue, that claim still falls under the purview of

the Delaware Superior Court's decisions. . . . [because those] orders have rested, in part,

on evidence indicating that Gillis was properly diagnosed and treated for schizophrenia."

(D.I. 152. at 20-21). Those missing documents are the crux of this case, without them it

has *not* been shown that Gillis was properly medicated so the defendants cannot rely on

the later Delaware court orders.

The state court simply did not adjudicate the constitutional claims which are now

properly before this court. And finally, the basis for the first known state court order of

March 31, 1999, compelling continued administration of psychotropic drugs, is a

contemporaneous medical evaluation that, like the records from 1986-1996, is missing

from the produced medical records.

> **F.  *Summary Judgment is Inappropriate because the Defendants' Liability is
> Predicated on Supervisory Liability, and the Defendants Cannot Rely on
> Failure to Follow Retention Policies***

Personal involvement can be shown through allegations that a defendant directed,

had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional

rights. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). To succeed on a

supervisory claim based on prison policy or practices, there must be a policy or practice

that the supervisor failed to employ that (1) created an unreasonable risk of *Eighth

Amendment* injury; (2) the supervisor was aware that the unreasonable risk was created;

(3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy

or practice. *See Sample,* 885 F.2d 1099, 1118. Here, summary judgment for Defendants

is inappropriate because Defendants are liable in their supervisory capacity and any lack

of proof is solely due to Defendants' failure to properly maintain inmate's medical records in violation of their own rules and policies.

Their policy is to maintain inmate's medical records for at least sixty years. Yet, Gillis' medical records are missing from 1986-1996. The State's medical care standards for inmates require documentation of treatment, particularly of forced psychotropic medication. Gillis' Eighth Amendment injuries and suffering may continue perpetually as a direct result of the failure to maintain these records. The State should not be allowed to hide behind its failure to follow its own policies and standard of care.

### G. *Insufficient Evidence Exists to Demonstrate Gillis' Failure to Exhaust His Administrative Remedies*

Failure to exhaust available administrative remedies is an affirmative defense that must be pled and proved by the defendant. *Jones v. Bock,* 549 U.S. 199 (2007); *Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir. 2002). This is appropriate because "it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion." *Id.* Such is the case here.

Like a statute of limitations defense, "in order for a defendant to succeed when it asserts failure to exhaust remedies in support of summary judgment, the defendant must establish the absence of a genuine issue of material fact as to each element of the defense." *Green v. Phila. County Prisons,* 2006 U.S. Dist. LEXIS 72742, *24 (E.D. Pa. Oct. 4, 2006) (citing *Brown v. Croak,* 312 F.3d 109, 111 (3d Cir. 2002)).

Here, like in *Green,* Defendants fail their initial burden by not detailing the requirements of the prison grievance system. For the court to determine the absence of a genuine issue as to each element of an exhaustion defense, the court must know what

14

administrative remedies are available to prisoners and whether Gillis exhausted them. Without any records from the time period 1986-1996, Defendants cannot make the proper showing. Any doubts should be resolved in Gillis' favor. There is simply insufficient evidence to conclude as a matter of law that Gillis failed to exhaust his administrative remedies.

Specifically, Defendants allege that Gillis utilized the prison grievance system "less than one month before he filed his Complaint" in this case, but he did not "utilize the steps of the grievance process . . . until after he had already filed his lawsuit." (D.I. 152. p. 27). What Defendants do not assert, and cannot without complete records, is how many times and to what extent Gillis utilized the prison grievance system in the past. In other words, was the most recent attempt at filing one grievance in a long list of futile attempts made by Gillis? Gillis has formally requested mental health assistance on numerous occasions regarding his medications in 2002. (Exh. C). A genuine issue of material fact remains.

## H. *Plaintiff's Claim is Not Barred by the Statute of Limitations*

Although claims filed in Delaware under 42 U.S.C. § 1983 are subject to a two year statute of limitations, *Moody v. Kearney,* 380 F.Supp.2d 393, 397 (D. Del. 2005) (Robinson, C.J.), the doctrine of "equitable tolling stops the statute of limitations from running when the date on which the claim accrued has already passed." *Lake v. Arnold,* 232 F.3d 360, 370 (3d Cir. 2000). The doctrine "prevents a party from profiting from its own wrongdoing." *Id.* Equitable tolling may be "applied to suits brought under federal civil rights statutes when the state statute of limitations would otherwise frustrate federal policy." *Id.* Those policies include goals of compensation and deterrence. *Hardin v.*

15

*Straub,* 490 U.S. 536, 539 (1989). Section 1983 specifically is meant to ensure that

individuals whose federal constitutional or statutory rights are abridged may recover

damages or secure injunctive relief and is to be accorded a broad sweep. *Id.* at 540 n.5

(internal citation omitted).

Equitable tolling is appropriate where the plaintiff has been prevented from

asserting his claim as a result of extraordinary circumstances. *Lake,* 232 F.3d at 370 n. 9.

Gillis' case is one such circumstance because equitable tolling is justified when mental

deficiency affects a prisoner's ability to "manage[] his affairs and thus understand[] his

legal rights and act[] upon them." *Graham v. Kyler,* 2002 WL 32149019, at *3 (E.D. Pa.

Oct. 31 2002) (internal citation omitted) ("[I]t is clear that the terms 'gross negligence'

and 'wanton conduct' bear some resemblance to the "deliberate indifference" standard

that permeates constitutional law). The focus is on the "irremediable inability to access

information and make use of it." *Id.* As a result of Defendants' actions, Gillis has been

incapacitated and has been, until now– with the present appointment of counsel– unable

to meaningfully assert his constitutional rights.

In *Moody v. Kearney,* a similar case brought before this court, plaintiff, a

longtime Delaware inmate, had been treated for schizophrenia throughout his

incarceration. 380 F.Supp. 2d 393. In 1999, plaintiff was on medication that inhibited his

ability to sweat, causing a body temperature increase. *Id.* On July 9, 1999, plaintiff was

housed in a room where the temperature inside reached 120 degrees. *Id.* Despite his

complaints, plaintiff was not removed from the room. *Id.* The next day, plaintiff was

found in an "unresponsive state." *Id.* It was concluded that plaintiff suffered a heat

stroke and subsequent brain damage. *Id.* As a result, plaintiff was wheelchair bound and unable to communicate effectively. *Id.*

Approximately five years later, plaintiff filed suit pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated. *Id.* Defendant correctional institution alleged that the Delaware statute of limitations time-barred plaintiff's claim. *Id.* Concluding, however, that application of Delaware's two year statute of limitations would preclude plaintiff's constitutional claims, this court decided that the case may proceed under the equitable tolling scenario noted above: "where the plaintiff has been prevented from asserting [his] claims as a result of [] extraordinary circumstances." *Id.* (citing *Lake,* 232 F.3d at 370 n. 9).

This court noted that "the very actions of which [plaintiff] is suing defendants injured him so severely that he was unable to pursue a remedy in a timely manner" and that until he "was represented by counsel, he was precluded from accessing any of the medical and correctional records that were relevant and these records were necessary to corroborate and supplement his memory of the events." *Id.* (citing 11 Del. C. § 4322[3]). The court concluded that "extraordinary circumstances" existed because plaintiff "could not by the exercise of reasonable diligence have discovered essential information bearing on his claim." *Id.*

The same problem presents itself here. Gillis is suing Defendants because improper forced-medication of psychotropic drugs has caused long-term side effects that,

---

[3] "No person committed to the Department [of Corrections] shall have access to any [presentence report, preparole report, supervision history or other case records]." *§ 4322(a)* "No inmate shall be provided a copy of the Department of Correction Policy and Procedures Manuals, The Bureau of Prisons Policy and Procedures Manuals, nor any of the Department of Correction Facilities Operational Procedures, Administrative Regulations and Post Orders." *§ 4322(c).*

among other things, are responsible for Gillis' irrational behavior resulting in four

additional charges during his incarceration and adding 27 years to his original sentence.

For example, all of the medications that Gillis has been forced to take potentially cause

sudden death and tardive dyskinesia– an irreversible condition characterized by

repetitive, involuntary, purposeless physical movements. (Exh. D, P00001-00095).

Specifically, Geodon causes Parkinson-like symptoms and has been linked to an

increased occurrence of accidental injury. (*Id.*). Haldol and Cogentine, on the other hand,

exacerbate psychotic symptoms including hallucinations, confusion, disorientation,

memory impairment, nervousness, depression, and catatonic-like behavior. (*Id.*). Haldol

itself may cause liver impairment, a risk significant to Gillis who has Hepatitis-C. (*Id.*).

Finally, Inderal can cause mental depression, hallucinations, short term memory loss, and

an acute syndrome characterized by disorientation of time and place. (*Id.*). Thus, Gillis'

forced medication has severely injured him so that he was unable to effectively pursue a

remedy in a timely manner until counsel was appointed to assist him. Significantly, if the

medical records from 1986-1996 were available it would aid the court in determining

how severely affected Gillis truly is. The missing documents—due to Defendants'

"neglect"—would assist the court in making the equitable tolling determination.

Defendants argue that because Gillis filed several lawsuits during incarceration,

he was capable of competently pursuing the claim now before the court. Gillis' first

attempt at using the court system in 1989 was merely a *filing* of an unrelated *pro se*

complaint. In that case, defendants responded to the complaint by way of a motion to

dismiss that was treated as a motion for summary judgment. Gillis himself, however,

failed to respond to the motion and summary judgment was granted in the defendant's

favor. (D.I. 153, A-72-78). His second attempt, also *pro se,* was made in 1996 and

resulted in a denial of Gillis' petition for a writ of habeas corpus. (*Id*. at A-89-98).

Finally, in 2002, Gillis filed a *pro se* complaint that was dismissed for failure to pay the

de minimis sum of $1.80. (*Id*. at A-99-100). None of these acts demonstrate Gillis'

ability to meaningfully negotiate the legal system and protect his rights. Here, it was not

until the entrance of court appointed counsel that *any* headway was made in the case.

　　　　Further, Gillis' "continued acceptance of guilty please over the years" does not

demonstrate that Gillis is competent and capable of adequately asserting his rights and

pursuing a complex civil rights case to completion,[4] (D.I. 152, p. 16); especially where,

as here, Plaintiff is incarcerated with limited or no access to vital documents.

Defendants rely on Gillis' own statements from a criminal transcript made in 2000 where

Gillis stated that he knew what he was doing when pleading guilty. (D.I. 153, A-55). The

relevance of this dialogue is minimal at best and considering that even within that

transcript Gillis paradoxically refers to the "conspiracy within the prison system" and

states that he was "being tortured within the prison system" by having his "thoughts []

enclaved by some type of device called infrared scanning device," the weight of this

evidence is apparent. (*Id*. at A-53-54). Later at the sentencing phase of that case, when

Gillis was sentenced to ten additional years, he again referred to the "conspiracy" at the

prison he was going through and denied being "schizophrenic and paranoid." (*Id*. at A-

59). What *should* be taken from these transcripts is that Gillis is delusional – typical side

effects of improper psychotropic medication.   If Gillis was competent, as defendants

asserted, then why he was forced on psychotropic medications?

---

[4] Competency to stand trial, of course, is a low standard. *Drope v. Missouri,* 420 U.S. 162
(1975).

Alternatively, the Third Circuit has recognized that under certain circumstances, violations are continuing in nature and thus delay the start of the statute of limitations. *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir. 1995) (Title VII discrimination). To establish that a claim falls within this continuing violations theory, plaintiff must (1) demonstrate that at least one act occurred within the filing period, and (2) establish that the occurrence is more than an isolated or sporadic act. *See Id.* 754-55. The focus of the continuing violations doctrine is on continual affirmative acts of the defendants, not continual ill effects from an original violation. *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir. 1982).

Here, the affirmative act of Defendants is the improper medication, including the forced injections, which have been consistently ongoing since at least 1996 up to the filing of the present complaint. (Exh. B, D00268-00322, D01163-01233). Thus, at least one of these acts occurred within the filing period and it was certainly not an isolated or sporadic act since Gillis has been receiving such medication and injections regularly for over 20 years. Under this theory, Gillis has filed a timely complaint.

The March 31, 1999 state court order for such medication should be of no avail. Gillis' improper forced medication of psychotropic drugs began in 1987 and the side effects over the ensuing 12 years become permanent and detrimentally affected his mental competency. Thus, by 1999 Gillis was of such mental incompetence due to Defendants' continual unconstitutional acts that the March 31 State Court Order cannot remove the original taint. That is, the later court decree, cannot insulate Defendants from being held accountable for the wrongfulness of their prior and ongoing actions. The medical evaluation referred to by the State Court Order is missing from the records. The

20

conclusion of that evaluation was the result of long term improper psychotropic medication

The interests of justice compel that the statute of limitations is not a bar to Gillis' claims. The policies of § 1983–deterrence and compensation–would be advanced and served by the continuation of this suit. Defendants would be deterred from impermissibly force medicating unwilling prisoners and from neglecting their duties as custodian of prisoners and prisoner records. Additionally, Gillis could get relief from the forced psychotropic medicating that has violated his constitutional rights and institutionalized him for the foreseeable and possibly indefinite future. Consequently, if Gillis' claims are barred, his present and future suffering is practically guaranteed in addition to future adverse effects of psychotropic medications. Defendants' actions will be permanently insulated from judicial review; no relief will ever be forthcoming. Defendants will have effectively benefited from neglecting their duties as custodians and caregivers of prisoners and prisoner records within the State of Delaware.

## V.    Conclusion

Essentially every issue Defendants raise is dependent on the missing records; every defense rides on what happened before 1996– the period covered by the missing records.

Defendants are responsible for the healthcare of its incarcerated which includes keeping the records that those incarcerated obviously cannot. All of Defendants' arguments merely go to the weight of the evidence, or weight of the absence of evidence. Defendants' negligence caused the missing records and cannot benefit from it.

21

For the foregoing reasons, plaintiff respectfully requests that the Court deny the defendant's Motion for Summary Judgment.

CONNOLLY BOVE LODGE & HUTZ LLP,

By:    /s/ Zhun Lu
   Zhun Lu (#4427)
   P.O. Box 2207
   Wilmington, DE   19899-2207
   Telephone: (302) 888-6207
   Facsimile:  (302) 658-5614
   Email:   ZLu@cblh.com
   *Attorney for Plaintiff*

Dated:  September 19, 2008

## CERTIFICATE OF SERVICE

I, Zhun Lu, hereby certify that on the 19th day of September, 2008, a true copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and the document is available for viewing and downloading from CM/ECF:

### BY CM/ECF and HAND DELIVERY

Erica Y. Tross, Esquire
State of Delaware
Department of Justice
Carvel State Building
820 N. French Street
Wilmington, Delaware 19801


/s/ Zhun Lu
Zhun Lu, Esquire (#4427)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
Telephone: (302) 884-6262
Fax: (302) 658-5614
Attorney for Plaintiff
Email: zlu@cblh.com