IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VURNIS L. GILLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 04-921-SLR |
| | ) |
| STAN TAYLOR, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 25th day of March, 2013, having considered plaintiff's motion to vacate judgment and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 195) is granted, for the reasons that follow:

1. **Background.** In August 2004, plaintiff Vurnis L. Gillis,[1] an inmate at James T.

---

[1] On August 26, 1986, plaintiff began serving a 25-year sentence at JTVCC after having been convicted of charges relating to robbery. (D.I. 152 at 7) In 1987, plaintiff was diagnosed as suffering from schizophrenia and, as treatment, was prescribed a series of psychotropic medications. (D.I. 2 at ¶ 27; D.I. 152 at 7) Plaintiff complained to the prescribing doctors of "severe side effects, blurred vision and wild mood swings," but was told that these were normal reactions and that the effects would eventually dissipate. (Id. at ¶¶ 28-29) Plaintiff alleges that the side effects did not improve but rather worsened and, as a result, caused him to commit four separate crimes while incarcerated: (1) assault in a detention facility and conspiracy; (2) carrying a concealed deadly weapon and promoting prison contraband; (3) assault; and (4) arson. (D.I. 2 at ¶¶ 30-33) Plaintiff pled guilty to these four crimes and was sentenced to an additional 27 years of incarceration. (Id. at ¶ 35)
On March 31, 1999, Delaware Superior Court Judge Charles Toliver ordered that plaintiff be required to take any medications and/or other treatments as directed by the JTVCC's Forensic Evaluation Team. (D.I. 153 at 112-13) By April 14, 1999, plaintiff had begun refusing to take his prescribed medication; a series of JTVCC memoranda document plaintiff's various refusals. (Id. at 114-26) On November 6, 2001, Judge Toliver reaffirmed the March 31, 1999 order and indicated that the order was to remain in effect unless or until modified by the Delaware Superior Court. (Id. at 133)

Vaughn Correctional Center ("JTVCC"), Smyrna, Delaware, filed this civil rights action against defendants Stanley W. Taylor, Jr. ("Taylor"), former Commissioner of the Department of Correction of the State of Delaware; Paul Howard ("Howard"), former Chief of the Bureau of Prisons of the Department of Correction of the State of Delaware; Thomas L. Carroll ("Carroll"), former Warden of the JTVCC; Elizabeth Burris ("Burris"), former Deputy Warden, JTVCC; Lawrence McGuigen ("McGuigen"), Deputy Warden, JTVCC; and Jim Simms ("Simms"), Counselor, JTVCC[2] (collectively, the "State Defendants"), pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the State Defendants violated his constitutional rights to due process and freedom from cruel and unusual punishment by forcibly administering psychotropic medications to him.

2. The case was assigned to the Honorable Kent A. Jordan, U.S.D.J., who referred the matter to the Federal Civil Panel for representation. Zhun Lu, Esquire, accepted appointment on May 3, 2006. In 2007, following Judge Jordan's appointment to the United States Court of Appeals for the Third Circuit, the case was assigned to the Honorable Mary Pat Thynge, U.S.M.J. for all pretrial proceedings. As a result, several teleconferences and orders were entered to manage the litigation.

3. In February 2008, the case was reassigned to the undersigned. On August 28, 2008, the court held a discovery conference where plaintiff raised the problem of obtaining his complete medical file. (D.I. 148) Specifically, plaintiff's records from 1986 to 1995 were missing. Plaintiff asserted that the State had failed to maintain and keep

---

[2]In addition to the six State Defendants listed above, there are (14) additional defendants who have not been served.

2

those records, despite a duty to do so. Following the conference, the parties cross-moved for summary judgment.

4. On June 18, 2009, the court denied plaintiff's motion for summary judgment on the issue of improper administration of forced psychotropic medication and granted defendants' motion for summary judgment on statute of limitations grounds. Essentially, the court concluded that plaintiff's claim accrued in 1999 and plaintiff was required, under the two-year statute of limitations, to file suit on his claim in 2001, which he failed to do. The court further found that the equitable tolling and continuing violations doctrines did not apply to excuse the missed statute.[3] (D.I. 163 at 7-8)

5. On July 8, 2009, the court ordered plaintiff to show cause why certain (14) defendants should not be dismissed due to his failure to provide sufficient information to effectuate timely service. (D.I. 165) Plaintiff responded that he has been diligent in his attempts to locate and serve defendants and requested that any dismissal be without prejudice. (D.I. 170) The court took no action on these defendants.

6. On July 17, 2009, plaintiff appealed the court's summary judgment order to the Third Circuit. (D.I. 166) On September 28, 2009, plaintiff moved for reconsideration and to vacate the summary judgment decision. (D.I. 171) He also requested to reopen limited discovery. (D.I. 172-74)

7. The court held a teleconference on October 27, 2010, wherein plaintiff counsel advised the court:

---

[3]In so doing, the court noted that plaintiff had filed three separate lawsuits in 1989, 1996 and 2002, which demonstrated that he possessed sufficient mental faculties to discover and redress his constitutional rights. (D.I. 163 at 3, 7)

3

> After the summary judgment decision, we were preparing for some additional work, and then we identified several cases which were filed by the plaintiff pro se, but under different names. So following up those cases, we identified some additional medical records. Namely, starting from 1985 to about 1990. And the new medical records indicate that the psychotropic medication started around August of 1989. And as you may remember, that one of the key issues for this case was the whereabouts of certain medical records starting from 1985 up to the 1995 or 1996 period.
> And the prior discovery measures the plaintiff engaged in discovered the regular medical records from 1996 up to current, but at that time, there was about a ten-year gap in terms of medical records, and because of the newly discovered medical records, indicated that there were early psychotropic medications which actually were about the same time as the additional charges placed on the plaintiff. So we believe, and also I believe the counsel for the defendant agrees that those new medical records gave rise to some fact issues as to the mental status of the plaintiff around that time, and which also is the critical basis for the -- whether the statute of limitations should be tolled. Therefore, by talking to [defense counsel], who is the counsel for the defendants, we believe that this opens an opportunity for us to find out whether there are additional medical records to fill in the current gap, which is about five years.

(D.I. 175)

8. Defense counsel responded:

> We have a pending motion for relief from the summary judgment and request to open discovery, and I think it has been agreed that we need to enter into discovery. It's just a matter of how to do it the most efficient way. And I think -- and correct me if I'm wrong, [plaintiff's counsel] -- but I think what we discussed is, if we can keep the summary judgment intact and then just have a discovery schedule for this limited discovery issue, and then we can all revisit whether we should have relief from the summary judgment after we've gone through the discovery process rather than trying to brief the issue now and then possibly go through the discovery and then brief the issue again later, we just do it once. But that would require us entering into discovery post summary judgment, and that's an issue I think that we wanted to discuss with the Court, to make sure that your Honor didn't have any problems with that, and to see if maybe your Honor has any other ideas about how -- the best and most efficient way to handle this issue.

4

The court agreed to not dissemble the summary judgment and to allow limited discovery. (D.I. 175)

9. On March 21, 2011, the Third Circuit dismissed plaintiff's appeal. (D.I. 190) On March 28, 2011, new counsel entered his appearance for State defendants.

10. A teleconference was conducted on April 8, 2011. (D.I. 193) A scheduling order setting discovery and dispositive motions deadline was entered. (D.I. 194) On May 23, 2011, plaintiff filed the pending motion to vacate the summary judgment order. (D.I. 195)

11. Plaintiff argues that evidence discovered after summary judgment was granted reveals that he suffers and has long suffered from borderline mental retardation, paranoid schizophrenia and severe delusions and that he does not have the mental capacity to redress violations of his constitutional rights. D.I. 196) With respect to other litigation[4] filed pro se by plaintiff, none of these cases proceeded in any substantive manner and were dismissed for procedural reasons. Plaintiff contends that his impulsive initiation to file suit, followed by total inaction, demonstrates an inability to protect his legal rights.

---

[4]During his incarceration, plaintiff has used seven aliases. (D.I. 196 at n.1) During the supplemental discovery period, plaintiff discovered that three additional lawsuits were filed under the alias Ishmael Nasir Muhammad, to wit: *Muhammad v. Kanniard*, Civ. No. 90-597-SLR (dismissed for failure to prosecute); *Muhammad v. Brown*, Civ. No. 91-178-JJF (dismissed with no action taken by plaintiff); *Muhammad v. VanRobinson*, Civ. No. 90-602-LON (dismissed per plaintiff's request after defendants filed unopposed motion to dismiss).

12. Further, plaintiff asserts that newly discovered evidence[5] located during the supplemental discovery period creates an issue of material fact, rendering summary judgment inappropriate. Specifically, plaintiff discovered that, in 1978 as a teenager, he was evaluated by the Governor Bacon Center ("Bacon Center"). (D.I. 196 at ex. C) A pre-admission evaluation reflects an intellectual efficiency that "measures in the borderline to mildly defective range," with a "general fund of information [ ] rather limited" but "within the range that is consistent with his overall level of functioning." (Id.) A psychological report dated March 5, 1979 and when plaintiff was almost 16 years of age, provides, in part:

> Plaintiff obtained a verbal IQ score of 78 (borderline mental defective); a performance IQ score of 85 (low average); and a full scale IQ score of 80, placing him within the low average range of intellect. This is an interesting finding, since referral source data suggests that he is borderline retarded. This is not necessarily the case, but he may operate as such in a heavily verbal medium. He does not like to talk or to interact very well, and does not maintain eye contact, which could contribute to an overall impression of retardation.

(Id. at ex. D)

13. Records from the Bacon Center state, in part, that on February 27, 1980, he was diagnosed with "latent schizophrenia" and "atypical paranoid disorder," among other things. (Id. at exs. E, F) He was prescribed thorzine at Bacon Center and remained there for approximately two years. (Id. at ex. G) In 1985, plaintiff was incarcerated. No mental problems were noted in his prison admission history. (D.I. 173 at A003)

---

[5]Deposition testimony reveals that parts of plaintiff's prison and medical records are missing. (D.I. 200 at ex. A & B)

14. Defendants argue that plaintiff's litigation history proves that he is able to recognize and proceed coherently with his claims. (D.I. 198) They disagree that the new records demonstrate an inability to timely file the complaint. Defendants further assert that the newly discovered evidence does not support equitable tolling and the summary judgment should remain intact.

15. **Analysis.** The general purpose of Rule 60(b), "which provides for relief from judgments for various reasons, is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978); *Coltec Indus., Inc., v. Hobgood*, 280 F.3d 262, 271 (3d Cir. 2002). The interest in finality is paramount and so relief under Rule 60(b) is extraordinary. *Moolenaar v. Government of the Virgin Island*, 822 F.2d 1342, 1346 (3d Cir. 1987). The decision to grant a motion for relief from judgment is left to the sound discretion of the trial court. *Ross v. Meagan*, 638 F.2d 646, 648 (3d Cir. 1981).

16. Rule 60(b)(2) provides that a court may relieve a party from a final judgment when there is "newly discovered evidence that, within reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). This standard mandates that the new evidence must be: (1) material and not merely cumulative; (2) could not have been discovered before the order through the exercise of reasonable diligence; and (3) would probably have changed the outcome of the trial. *Compass Tech v. Tseng Lab.*, 71 F.3d 1125, 1130 (3d Cir. 1995). A Rule 60(b)(2) motion must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

17. Rule 60(b)(6) states a court may relieve a party from a final judgment when there is "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The rule is a "catchall provision that allows relief for any reason justifying relief from the operation of the judgment." *United States v. Witco Corp.*, 76 F. Supp. 2d 519, 527 (D. Del. 1999). This section, however, provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances. *Coltec Indust. v. Hobgood*, 280 F.3d at 273; *see also Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Rule 60(b)(6) motions must be filed within a reasonable time. Fed. R. Civ. P. 60(c)(1).

18. In the case at bar, plaintiff has demonstrated to the court's satisfaction that exceptional circumstances warrant relief under Rule 60(b)(6).[6] The new documents reflect that the court considered an incomplete record[7] when evaluating the summary judgment motions. *See Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000). For example, the court previously surmised that plaintiff's ability to file three other lawsuits meant that he "still had mental faculties sufficient to discover potential

---

[6]Although defendants urge the court to review the motion under Rule 60(b)(2) and have declined to respond to the arguments raised under Rule 60(b)(6), the court finds that review under Rule 60(b)(6) is appropriate because the court- and counsel-approved deadlines took the parties outside the one-year deadline required under Rule 60(b)(2). The summary judgment order was issued on June 18, 2009; however, the deadline to file motions related to supplemental discovery was May 23, 2011, outside the one year required to seek relief under Rule 60(b)(2).

[7]After conferring with counsel (who amicably conferred and proposed the same course of action to the court), the court allowed supplemental discovery to commence, but did not disturb the summary judgment order. During the course of discovery, plaintiff pursued numerous avenues in an effort to locate his records, and achieved some success: (1) D.I. 176 (record keeping R. 30(b)(6) deposition); (2) D.I. 177, 178 (subpoena for records); (3) D.I. 179 (motion for protective order); (4) D.I. 185, 186 (affidavit); (5) D.I. 188 (subpoena of juvenile facility for records); (6) D.I. 189 (subpoena for records in custody of Department of Children, Youth and Family Services); and (7) D.I. 196 ex. A (affidavit), ex. B (records).

infringements upon his constitutional rights and seek remedies for these infringements through the courts." (D.I. 168 at 7) It is unclear whether that conclusion would remain unchanged in light of the new evidence.

19. In reaching this decision, the court is mindful of Federal Rule of Civil Procedure 17(c) and the Third Circuit's decision in *Powell v. Symons*, 680 F.3d 301 (3d Cir. 2012). Rule 17(c)(2) provides that "[t]he court must appoint a guardian ad litem - or issue another appropriate order - to protect a minor or incompetent person who is unrepresented in an action." The court considers whether Rule 17(c) applies if "presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court receive[s] verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Powell*, 680 F.3d at 307 (3d Cir. 2012) (citing *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003)).

20. Since the appointment of counsel in 2006, plaintiff's litigation has been guided by diligent counsel, consistent with Rule 17(c).[8] Out of an abundance of caution and in light of the record of forced psychotropic medication during a period where medical and prison documentation as to plaintiff's mental status was missing or ambiguous, the court finds that the summary judgment granted on June 18, 2009 must be vacated.

---

[8]The court notes that the parties attempted to resolve this matter through mediation, but were unsuccessful in their efforts.

IT IS FURTHER ORDERED that a telephone conference shall be held on **Thursday, April 18, 2013, at 8:30 a.m.** Counsel for plaintiff shall coordinate and initiate this call.

_____
United States District Judge